EVERETT v. THE UNION PACIFIC R. Co.

1. **Witnesses:** NUMBER OF LIMITED: DISCRETION OF COURT.   The trial court has a legal discretion to limit the number of witnesses that may be examined to establish a single point or proposition; and *held* that such discretion was not abused by the court in this case.   BECK and ADAMS, JJ., *dissenting*.

2. **Damages:** MEASURE OF: MARKETABLE VALUE: INSTRUCTION.   An instruction to the effect that the marketable value of property is the amount for which the property would sell if put upon the open market and sold in the manner in which property is ordinarily sold in the community in which it is situated, *held*, correct, and not necessarily calculated to raise the inference that a forced sale was meant by the court.

3. **Practice in Supreme Court:** REJECTION OF EVIDENCE: ERROR MUST BE SHOWN.   Where evidence is rejected by the trial court this court will presume that it was properly rejected, unless the contrary affirmatively appears from the record.

4. **Evidence:** VALUE OF LAND: TOO REMOTE.   Evidence that some land near by that in controversy was sold ten or twelve years before the trial at a certain price, *held* too remote to determine the value of the land in controversy at the time it was appropriated.

5. ———: ———.   When the land in controversy might prudently be laid out in city lots, but in fact is not, evidence as to what its value would be if so laid out is incompetent.

6. **Practice in Supreme Court:** VERDICT AGAINST EVIDENCE.   This court cannot say that a verdict should have been set aside as being against the evidence when the evidence is conflicting and is not all before the court.

*Appeal from Pottawattamie District Court.*

FRIDAY, JULY 14.

THIS is a proceeding instituted for the purpose of determining the damages sustained by the plaintiff, because of the appropriation by the defendant of certain real estate belonging to the plaintiff for the purposes of its road.   The plaintiff appealed from the assessment made by the sheriff's jury to the Circuit Court.   There was a transfer to the District Court where there was a trial by jury, which resulted in a verdict and judgment for the plaintiff and therefrom she appealed.

*Scott & Hight*, for appellant.

*Wright & Baldwin*, for appellee.

SEEVERS, CH. J.—I. After the jury was sworn, and when the plaintiff was about to introduce her evidence, the court announced "that each party would be limited to five witnesses on the question of the value of the property." After introducing five witnesses the plaintiff asked leave to produce and examine other witnessess touching the value of the property. This was refused. To said rulings the plaintiff excepted and assigned the same as error. It was admitted of record that the quantity of land owned by the plaintiff was ten acres and that one acre thereof had been appropriated by the defendant.

In *Kesee v. C. & N. W. R. R. Co.*, 30 Iowa, 78, and *Bayes v. Herring*, 51 Id., 286, it was held the trial court had 1. WITNESSES: number limited: discretion of court. a legal discretion to limit the number of witnesses that might be examined to establish a single point or proposition. Following these cases the only question is whether the discretion reposed in the court has been abused: There is no pretense the plaintiff was taken by surprise, unless it can be said because more than five witnesses were examined on a previous trial therefore the plaintiff had reason to believe the number would not be limited on the present trial in the court below. As the order was made before any witnesses were introduced, the plaintiff had the power of selecting those she desired to examine in compliance with the order. Therefore it cannot be said she was prejudicially surprised by the mere exercise of a discretion vested in the court.

At the previous trial there was no limit as to the number of witnesses that might be introduced, and we understand more than five were introduced on such trial by the plaintiff. The court, therefore, had knowledge what the witnessess had testified to, and the presumption must be indulged in the absence of any showing to the contrary their evidence would

be the same on this as it had been on the former trial. The order, therefore, was advisedly made, and as it is not claimed the plaintiff sought to introduce witnesses who were not examined on the former trial, we cannot say the court abused its discretion. It is evident if there is a discretion the mere fact it is exercised is not sufficient to show it has been abused.

II. It is urged the third, fourth and sixth paragraphs of the charge are erroneous. No exception was taken to the

2. DAMAGES: measure of: instruction.

fourth, nor has error been assigned in relation thereto. In the third paragraph it is said the court "assumed to explain the term 'marketable value' to be the amount for which the property would sell if put upon the open market and sold in the manner in which property is ordinarily sold in the community in which it is situated." The objection urged is the prominence given to "putting the property upon the market and selling it." It is said it was "calculated to impress upon an ordinary juror the idea of a forced sale in August, 1878." We do not think this is so, unless real estate was ordinarily so sold, and if it was, then the marketable value was the price it would bring at such sales. But we do not think the jury would or could infer that forced sales were meant by the court, but such as ordinarily occurred in the community where the property is situated. It is further said the instruction limits the sale of the property by the acre and the jury would not be authorized to estimate its value if laid off into lots. We do not concur in this view. We are unable to discover that any limit was fixed beyond which the jury should not go or that they were limited as to the manner of the sales except such as ordinarily occurred. Certainly there cannot be any other rule. The extraordinary or unusual cannot be regarded as rules by which human transactions or conduct can be squared. The instruction under consideration is not erroneous.

We have carefully examined the sixth paragraph of the charge in the light afforded by the argument of counsel, and

we are unable to say it is erroneous. On the contrary, we think it correct and the legal thought well expressed. Counsel are mistaken in the assumption any facts are assumed. We do not deem it necessary to set out the instruction.

III. Several objections are urged to the admission and rejection of evidence. The most important will be briefly considered. A witness was asked "State what you know about buildings being on the land around this tract or adjacent to it." This question was objected to and the objection sustained. The appellee insisted the land in question had not been laid out in city lots and that it should be valued as farming lands. The appellant insists the land was suitable and could be laid out into lots and sold as such, and this fact should enhance the value. Now, if adjoining or abutting land had been laid out into lots, sold as such, and buildings errected thereon, we are not prepared to say such evidence would not be admissible. But no such case is before us. "Around" or "adjacent to" are exceedingly indefinite when applied to the subject-matter of the present inquiry. And as the rule is error must affirmatively appear we cannot say the court erred, because we have no means of knowing where the lands about which the inquiry was made are situated. For aught we can know they may have been so distant that their improvement could not possibly have any bearing on the question before the jury.

3. PRACTICE in supreme court: error must appear.

A witness sold some land near that in controversy ten or twelve years before the trial, and the court ruled the price then obtained would not be competent evidence of the value of the land in question at the time it was appropriated. We think this ruling correct. The period when the transaction occured was too remote.

Plaintiff asked a witnesss how many residence lots are ordinarily laid off or contained in an acre, and what this land, if so laid off, would probably sell for per lot in the market. This evidence was, we think, properly rejected. It is said a prudent owner would lay

4. EVIDENCE: value of land: too remote.

the land out in lots and then sell it. Possibly this is so, but as it had not been so laid out when appropriated, the question was what it was worth in the condition it then was, and not what its prospective value was, or what it would be if it had been laid out into city lots.

The defendant asked a witness how another parcel of land compared in character and uniformity with the tract in question. To this the plaintiff objected, but the same was overruled and the witness answered, there was a similarity in the two tracts. We are not sure we understand the point intended to be made, unless it is the witness's construction of similar was erroneous. But this could be inquired into on cross-examination and was a matter for the jury. We are unable to see any objection to the evidence or the prejudice that resulted therefrom. No objection is made that the respective tracts were not so situated that the character and uniformity of one would not be admissible as matter of comparison for the consideration of the jury.

IV. Accompanying a motion for a new trial there were affidavits tending to show that one of the jurors during, the deliberations of the jury, said in substance: "I do not care * * * for the evidence of the witnesses, or the charge of the court. I know what the damages are. They are not over fifty dollars." There were two of such affidavits. The implicated juror made an affidavit in which the language preceding that used by him is stated. Conceding this to be true, what was said by the juror is not seriously objectionable. The court must have believed the story told by the juror, or that conceding the affidavits filed by the plaintiff to be true, the verdict should not be set aside. We shall not discuss the last for the reason the first is sufficient. We are unwilling to set aside the verdict on the showing made. We strongly incline to think the affidavit made by the juror is true, and that the jurors filing the other affidavits either did not hear all that was said or have

failed to state the connection in which the juror spoke the words objected to.

V. It is said the verdict is so manifestly against the evidence it is our duty to set it aside. It is conceded the evidence is conflicting. The sheriff's jury assessed the damages at $200. It is said by counsel for appellant that according to the average of the plaintiff's evidence the verdict should have been for $1,600, and if based on the evidence of defendant it should have been $225. The verdict excluding interest was $450. It is evident the jury did not base their verdict exclusively on what the witnesses of either party said. There was introduced as evidence by the plaintiff a map of Council Bluffs "showing the property in controversy and vicinity. This map showed, no doubt, how far the property in controversy was from the city of Council Bluffs, and the situation of the property in controversy, and that abutting thereon. This evidence would enable the jury to properly apply and test the evidence of the several witnesses and arrive at conclusions as to the weight to be given thereto.

6. PRACTICE in supreme court: verdict against evidence.

This map no doubt was before the court when the motion for a new trial was overruled, but it is not before us. It is impossible for us to say the verdict is manifestly against the evidence when the evidence is not all before us.

AFFIRMED.

BECK, J., dissenting.—In *Kesee v. The C. & N. W. R. Co.*, 30 Iowa, 78, two witnesses testified to facts which rendered impossible an act testified to by one witness introduced by the other party, and it was proposed to introduce two more witnesses to the facts testified to by the two who had given their evidence. The court below refused to hear the witnesses offered, on the ground that the evidence would lead to an unnecessary consumption of time. In *Bays v. Herring*, 51 Iowa, 286, the *nisi prius* court refused to hear the testimony of more than seven witnesses to impeach the reputation of a

witness giving evidence in the case. It does not appear that any testimony was given in support of his reputation. The ruling in each case was sustained by this court. It cannot be doubted that the courts possess the power to arrest the introduction of testimony upon trials in proper cases.

There is no rule of the law arbitrarily limiting the number of witnesses which may be introduced in support of any issue, nor do the courts possess authority to adopt such a rule. The power to limit the number of witnesses can only be exercised to attain the ends of justice and prevent unreasonable delay by the unnecessary multiplication of proof. It may be exercised too in cases where it is apparent that the further introduction of evidence will throw no additional light upon the issues and will not serve to strengthen either side of the case.

The parties relied at the trial almost exclusively upon the opinions of witnesses as to the damage sustained by plaintiff in the appropriation of the land. It is very plain that the jury would be, as they ought to be, guided to a verdict by the number of the witnesses as well as their credibility and knowledge of the value of the land. If five equally credible and intelligent witnesses on each side should make contradictory statements, to satisfy the minds of the jurors other witnesses, if they may be found, ought to be introduced. It is no argument in support of the court's rulings to urge that the number of witnesses in this case could have been indefinitely increased, and that in the absence of the restriction great delay and expense would have been incurred. Courts and juries are provided by the law to administer justice though it may require time and great outlay of money. And it would have been time enough for the court below to exercise its power when it became really apparent that it was demanded by justice. Surely it cannot be said that five witnesses on a side is the precise limit which time and economy will prescribe for the trial of an issue which mainly depends upon the opinions of witnesses in regard to the value of city property. The parties could have shown the prices

of actual sales of property in the vicinity of the land in question tó establish its value. It is very plain that many witnesses may have been required to prove such sales.

But it may be said that the case had before been tried and the court was informed of the character of the evidence about to be offered. The court was informed of the nature of the evidence used upon the former trial. But the parties were not restricted to the same testimony in the second trial, nor were they required to advise the court of the character of the evidence they were about to offer.

Another thought supports the conclusion I have above expressed. The jury were required to base their finding as to their value of the property largely upon the opinions of witnesses. The parties being limited to five witnesses each, would select those entertaining the most extreme opinions in favor of the respective parties. A fair estimate of the value of the property is not attainable by considering alone the opinions of witnesses holding extreme views relating thereto. By permitting many to testify the jury would have had before them, it is probable, the testimony of persons less extravagant in their opinions as to the merits of the claims on either side of the case. They would have been aided thereby to find a true verdict.

Mr. Justice ADAMS concurs in this dissent and unites with me in the opinion that the judgment of this District Court ought to be reversed for error in limiting the number of witnesses of plaintiff to be examined upon the issue as to the value of the property.