THE STATE OF KANSAS, *on the relation of William Barrett, County Attorney,* v. THE BOARD OF COMMISSIONERS OF PRATT COUNTY *et al.*

1. POOR-FARM—*Purchase; Valid Election.* Where an election is held in pursuance of an order of the board of county commissioners to determine whether a fund shall be raised by taxation upon the taxable property of the county with which to purchase a poor-farm, and the people of the county generally vote at such election, and a vast majority of the votes cast are in favor of the proposition, and afterward the board purchases a poor-farm, *held,* that the failure of the county clerk to enter the order of the county board calling the election, upon the records of the county, will not invalidate the election.

2. TAX—*Specific Amount Not Fixed.* And in such case, where the county board did not in calling the election fix any single and specific amount of money to be raised by taxation, but submitted to the electors the question whether a rate per cent., to wit, 8 mills on the dollar of the taxable property of the county, should be levied or not, *held,* that this mode of submitting the question did not render the election invalid.

3. ELECTION RETURNS—*Abstract Not Signed by County Clerk.* Where the returns of such election are duly canvassed by the county board acting as a board of canvassers, and an abstract of the vote is made, the failure of the clerk to certify and sign such abstract will not render the election invalid.

4. WITNESSES—*Limiting Number.* On the trial of the case the court limited the number of witnesses who might testify as to the value of the land purchased by the county board for a poor-farm to six on each side. *Held,* Under the circumstances of the case, that such limitation was not erroneous.

5. POOR-FARM—*Valid Purchase.* The tax to be levied was eight mills upon the valuation of the taxable property of the county for the year 1887. The land for the poor-farm was purchased on October 6, 1887. The tax was not levied during the year 1887. *Held,* That such failure to levy the tax does not render the purchase of the poor-farm invalid.

### *Error from Pratt District Court.*

THIS was an action brought in the district court in the name of *The State,* by William Barrett, county attorney of Pratt county, to perpetually enjoin *John Burkholder,* E. N.

41—42 KAS.

Watson and J. D. Fitzsimmons, county commissioners, Demcy Lewis, county clerk, E. W. Farmer, county treasurer, and James K. Beauchamp and Tirzah F. Beauchamp, from carrying into effect a certain transaction whereby the Beauchamps sold and conveyed 240 acres of land to Pratt county, and received in payment therefor a county warrant or scrip signed by the chairman of the board of county commissioners and the county clerk for $11,050, and an agreement by the county to assume and pay an incumbrance upon the land of $950, making a total of $12,000 as the purchase-price of the land. At the April term, 1888, the case was tried before the court without a jury, and the court made the following findings and conclusions, and rendered the following judgment, to wit:

### FINDINGS OF FACT.

"1. On the — day of ——, 1886, the board of county commissioners of Pratt county, Kansas, while in regular session, made an order to submit the question to the voters of Pratt county whether or not a tax should be levied to raise money with which to purchase a poor-farm for said county; that no record of said order appears on the journal of the proceedings of said board.

"2. Afterward the following order was drawn up by the then county attorney, and delivered to the sheriff of the county for publication, to wit:

"'Whereas, the present system of caring for the poor of Pratt county has become burdensome, and the board of commissioners believing it to be expedient and economy to purchase a poor-farm, it is therefore ordered that at the general election in November, 1886, a vote be had on the proposition, 'Shall an assessment on the next year's valuation not to exceed eight mills on the dollar be made to raise a fund to purchase and equip a poor-farm?' Persons voting in favor of the assessment to make the purchase shall have printed or written on their ballots, 'For the assessment not to exceed eight mills on the dollar with which to purchase a poor-farm.' Persons voting against the assessment and against the purchase of a poor-farm shall have printed or written on their ballots, 'Against an assessment not to exceed eight mills on the dollar with which to purchase a poor-farm.' It is further ordered that the sheriff of Pratt county give due notice by publication of the above order in the *Pratt County Press* and in the *Pratt County Times*, also by posting notices as required by law.'

"That the name of A. J. Eggleston, the then chairman of the board of commissioners, was affixed to said order, as well as that of Demcy Lewis, county clerk, by one J. W. Naron,

publisher of the *Pratt County Times*, who delivered same to sheriff for publication; that they both, with full knowledge of their said signatures being so affixed, made no objection thereto, but acquiesced in the fact. That the sheriff of Pratt county afterward published said order, together with his proclamation attached thereto, said proclamation being as follows:

" 'Now, therefore, I, Max Lamont, sheriff of Pratt county, Kansas, by virtue of the authority in me by law vested, and in pursuance of the above order of said board, do hereby give public proclamation and due notice that the above and foregoing proposition will be voted on at the general election to be holden in Pratt county, November 2d, 1886, the returns made and the result ascertained and declared as by law provided.

" 'In witness whereof, I, Max Lamont, sheriff of Pratt county, Kansas, have hereunto set my hand, at Iuka, Kansas, this 11th day of October, 1886.                                                    MAX LAMONT.'

"That said order and proclamation was published in the *Pratt County Times* by said sheriff.

"3. The record shows 1076 votes were cast in favor of said proposition, and 340 against it, at the general election held November 2, 1886, the record showing the same being as follows:

" '*Assessment with which to purchase poor-farm.*—For: Haynesville, 39; Carmi, 46; Naron, No. 1, 72; Naron, No. 2, 27; Iuka, 42; McClelland, 96; Center, 417; Logan, 3; McPherson, 7; Valley, 59; Saratoga, 9; Gove, 23; Elm, 39; Pusey, 32; Grant, 41; Springvale, 51; Banner, 30; Richland, 43; total, 1,076. Against: Haynesville, 8; Carmi, 4; Naron, No. 1. 2; Naron, No. 2, 1; Iuka, 91; McClelland, 5; Center, 4; Logan, 5; McPherson, 4; Valley, 19; Saratoga, 43; Gove, 40; Elm, 33; Pusey, 20; Grant, 26; Springvale, 4; Banner, 24; Richland, 7; total, 340.'

"4. It was generally understood throughout the county that a purchase would be made of a poor-farm for said county pursuant to said election, and numerous offers were made to the commissioners by parties who had farms to sell; and on the 6th day of October, 1887, said commissioners accepted the offer of Tirzah F. Beauchamp to sell the following-described premises, situated in Pratt county, to wit: The east half northwest quarter, and the north half northeast quarter, and southwest quarter of northeast quarter, and northwest quarter southeast quarter, section 15, township 28 south, of range 13 west, and agreed to and did pay therefor $12,000 in scrip of said county, and said Tirzah Beauchamp and her husband conveyed the same to the county by warranty deed, and the county now has title thereto, subject only to an incumbrance of $950, which the county assumed by the terms of said purchase and conveyance; the same was paid for by county warrant No. 1594, payable out of the poor-fund of Pratt county, Kansas; that said warrant is as yet unpaid.

"5. The said board of county commissioners did not levy a tax in the year 1887 to raise money with which to purchase a poor-farm, and have not since made any levy for such purpose."

### CONCLUSIONS OF LAW.

"1. Defendants are entitled to judgment.

"2. In this case the fact that in submitting to a vote of the people the amount of money to be raised to purchase and equip a poor-farm, that same was done by submitting the rate per cent. instead of a sum total, if irregular, does not invalidate the purchase.

"3. The fact that said commissioners may have levied said tax at a time of year subsequent to the time expressed in the vote authorizing them to make such levy does not render said levy void.

"4. In matters of the character involved in this suit the court has little to do with the judgment of the board of county commissioners; the question of good or bad bargain is only important as a circumstance throwing light upon the *bona fides* of the transaction."

It was therefore considered, ordered and adjudged by the court that the prayer in plaintiff's petition that the county warrant therein described be canceled and held for naught, is refused, and that the writ of injunction therein prayed for be and the same is hereby denied. For the purpose of having the foregoing judgment reversed, the plaintiff, as plaintiff in error, brings the case to this court.

*Geo. H. Closson*, county attorney, *William Barrett*, and *J. F. King*, for plaintiff in error.

*Rossington, Smith & Dallas*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: The principal question involved in this case is with reference to the validity or invalidity of a certain purchase by the board of county commissioners of Pratt county, of certain real estate to be used for a poor-farm. The authority given by statute to the board of county commissioners to purchase land to be used for such a purpose, and to levy taxes

to pay for the land so purchased, will be found in §§ 25 and 29 of the act relating to relief for the poor. (Comp. Laws of 1885, ch. 79, §§ 25, 29.)   These sections read as follows:

"SEC. 25. It shall be lawful for the board of county commissioners, in the several counties in this state, whenever they may deem it advisable, to purchase a tract of land, in the name of their respective counties, and thereon to build, establish and organize an asylum for the poor, and to employ some humane and responsible person or persons, resident in their respective counties, to take charge of the same, upon such terms and under such restrictions as the board shall consider most advantageous for the interests of the county, who shall be called 'Superintendent of the County Asylum;' and when two or more counties shall have jointly purchased any tract of land and erected an asylum for the poor of their several counties, they shall have the power to continue such joint ownership during their pleasure; and it shall be lawful for the county commissioners of two or more counties to jointly purchase lands, erect asylums, or do other things proper and necessary for the relief and comfort of the poor within the counties forming such joint ownership as is by this act provided for their respective counties."

"SEC. 29. To raise the sum necessary for the purchase of land, and the erection and furnishing of the buildings for such asylums, the board of county commissioners in the several counties shall have power to assess a tax on property liable to taxation for raising a county revenue, not exceeding five hundred dollars, unless the amount of taxes to be assessed shall be submitted to a vote of the people at some general election, and a majority of all the votes cast at a poll opened for that purpose shall be in favor of such assessment."

By virtue of the foregoing statutes an election was ordered by the board of county commissioners of Pratt county, and the election was held and the land purchased; but it is claimed that all this was void, for the reasons following:

I. It is claimed that the election was void for the reason that no record of the order of the board of county commissioners calling the election was ever made. It is true that the county clerk failed to enter of record the order of the county board calling the election, but the order was nevertheless made and published, and the election was in fact held in

pursuance of such order, and the people of the county gen-
erally voted at such election, and the proposition received in
its favor a vast majority of all the votes cast at such election;
and no effort it would seem was ever made until this action
was commenced to contest the election or to set it aside, or to
have it declared illegal or void, but on the contrary it was
treated as legal and valid, and the rights of third parties have
now intervened; and for all these reasons we think that the
election should now be held to be valid. See the following
cases where records were either defective or not made at all:
*Gillett v. Comm'rs of Lyon Co.*, 18 Kas. 410; *K. C. Ft. S. & G.
Rld. Co. v. Tontz*, 29 id. 460; *C. K. & W. Rld. Co. v. Comm'rs
of Stafford Co.*, 36 id. 121; *Bigelow v. City of Perth Amboy*,
1 Dutch. (N. J.) 297; *Taymouth v. Koehler*, 35 Mich. 22; *Bank
of U. S. v. Dandridge*, 12 Wheat. 64, 74; *Hutchinson v. Pratt*,
11 Vt. 402, 421; *City of Troy v. A. & N. Rld. Co.*, 13 Kas. 70.

II. It is further claimed that the election is void for the
reason that the order of the county board calling the election
submitted to the electors to be voted upon the question of a
rate per cent. as the limit of the amount of the tax that might
be assessed on the taxable property of the county, and did
not fix, as it is claimed that the board should have done, a
single and specific amount of money to be voted on, above
which and below which the commissioners could not go in
procuring a poor-farm fund by taxation; and the following
cases are cited in support of this claim: *Johnson v. Comm'rs
of Wilson Co.*, 34 Kas. 670, 691; *Mercer Co. v. P. & E. Rld.
Co.*, 27 Pa. St. 389; *Dowdney v. Mayor of New York*, 54 N. Y.
186; also Burroughs on Public Securities, 273. We do not
think that the authorities above cited are in point. In fact,
the first case cited, that of *Johnson v. Comm'rs of Wilson Co.*,
is to some extent adverse to the plaintiff's claim. The amount
designated in that case was not a specific amount, but it was
"a sum not to exceed thirty thousand dollars;" and yet the
election in that case was held to be valid and binding. The
next case, that of *Mercer Co. v. P. & E. Rld. Co.*, might at
first glance seem to be applicable; but even that case is not in

point. In that case, under the statutes of Pennsylvania the county commissioners were mere instruments for carrying out the will, intention and determination of the grand jury, and had no discretionary power of their own. Under the laws of Pennsylvania the grand jury determined everything and the commissioners determined nothing. The court in that case says: "The action of the grand jury was intended to be mandatory—a command, and not merely an authority." The other authorities cited are not in point. Under our statutes, and especially under § 29, above referred to, we think the election held in Pratt county conferred an authority upon the board of county commissioners to purchase a poor-farm for an amount greater than $500, but not for an amount exceeding the amount that a tax of eight mills on the dollar of the taxable property of the county for the year 1887 would bring. After that election the commissioners had the power to purchase any piece of land in the county for a poor-farm, and to pay therefor whatever it might be worth, provided of course that they kept within the limits above mentioned. Their discretion was not limited and controlled under our statutes to the extent that the discretion of the board of county commissioners in Pennsylvania was limited and controlled under their statutes. There is no statute in Kansas requiring that prior to an election such as was held in Pratt county the county board should determine and submit to the electors any specific amount of money to be voted on. Sections 17 and 19 of the act relating to counties and county officers, providing for the borrowing of money in definite amounts, have no application to this case.

III. It is further claimed that the election is void for the reason that the abstract of the votes made at the time of the canvass of the election returns by the board of county commissioners acting as a board of canvassers was not signed as provided by law. The abstract was not in fact signed by any person. This was another failure of duty on the part of the county clerk. It does not appear from the statutes that the members of the canvassing board should sign the abstract of

votes, but the statute does require that the county clerk should certify and sign the same. (Comp. Laws of 1885, ch. 36, § 31.) We do not think that such failure on the part of the county clerk invalidates the election.

IV. It is further claimed that the purchase of the land was void for the reason that the land was not worth the amount which the commissioners agreed to pay for it. Now several witnesses testified that it was worth that amount, and several others testified that it was not worth that much, some of them testifying that it was not worth even half that much. In this connection the plaintiff in error also claims that the court below erred in limiting the number of witnesses to prove the value of the land, to six on each side. Under the circumstances of this case, however, we think the court below certainly did not err. The question as to the value of the land was not directly in issue in the case, and had but very little materiality therein. The value of the land could be shown only as a circumstance tending to show either good faith or bad faith in the purchase and sale of the property. If the purchase and sale were in good faith and without fraud, it is immaterial whether the commissioners paid too much or too little for the property. Under the circumstances of the case we think that the limitation imposed by the court as to the number of witnesses was very reasonable. (*Hilliard v. Beattie,* 59 N. H. 462; *Union Rld. Co. v. Moore,* 80 Ind. 458; *Everett v. U. P. Rly. Co.,* 59 Iowa, 243; *Bays v. Hunt,* 60 id. 251.)

V. It is further claimed that the time limited by the election for purchasing a poor-farm, or for levying a tax to pay for the same, had expired before the land was purchased in this case. The election, however, furnished no such limitations. The election was held in November, 1886, and it authorized the raising of a fund to purchase a poor-farm by an assessment on the next year's valuation of taxable property not to exceed eight mills on the dollar. The proper time for levying the tax under this election would have been on the first Monday of August, 1887, (Tax Law, § 83,) provided

the commissioners could at that time have known that they would need the money to pay for the poor-farm within the next year, but the commissioners failed to levy the tax in August, 1887, and had not done so when they purchased the land, which was on October 6, 1887. But they still had time, after purchasing the land, to levy a tax for that year and put the tax upon the tax-roll of that year; but this action was immediately commenced and a temporary injunction allowed which prevented them from doing so; but they can still levy the tax provided they have not heretofore done so, for their failure at the proper time to levy the tax will not prevent their levying it afterward. And certainly under the circumstances of this case, their failure to levy the tax at the proper time will not invalidate their purchase of the land; and that is the only question now to be considered.

We have now examined every point presented in this case that merits consideration, and we do not think that the court below committed any material error, and therefore its judgment will be affirmed.

All the Justices concurring.