No 7864.

THE UNION RAILROAD TRANSFER AND STOCK-YARD COMPANY *v.* MOORE.

RAILROAD.—*Assessment of Damages.—Instruction.*—Two railroads, side by side, already crossed the appellee's farm, between his house and barn, within one hundred feet of each. The appellant appropriated for its main line a strip seventy-five feet wide along the east line of the farm, about seven hundred feet from the house, and for a switch, to make connection with one of the other roads, a strip from the main line seven hundred feet south of the other roads and curving thence northwesterly and reaching the other roads between the house and barn. The west line of the farm is two and one half miles east of the court-house in Indianapolis. There was a hamlet of four or five houses abutting the farm on the east. Upon the trial of an action for the appropriation of

The Union Railroad Transfer and Stock-Yard Company *v.* Moore.

such land, an instruction that the condition of the other roads could "only be considered in estimating the value of the ingress and egress, upon the east of" the farm "to and from the residue not appropriated by the" defendant, was calculated to mislead the jury, and should have been refused.

SAME.—*Evidence.— Witness.*—A witness for the appellee having testified in chief that the farm was worth $600 per acre, and on cross-examination that it could not have been sold for more than $200 per acre, but that he knew of no sales in that neighborhood at the latter price, on re-examination was allowed to testify over exception, that he knew of no land that could have been bought in that neighborhood for less than $500. *Held,* that this was error.

SAME.—Evidence, that since the appellant's road was built the place of its junction with other roads, as well as at the junction of the switch with them, is almost constantly obstructed by locomotives, cars and smoke, upon it and the other roads, was held admissible.

SAME.—In proving the value of land, it is proper to ask a witness if he knows its value—and the inquiry need not in terms ask as to "the market cash value." Value in that connection means cash value.

SAME.—*Cross-Examination.*—A witness for the appellant having testified to the value of the land, and the damage to it, and the demand for land in the locality, may properly be asked, on cross-examination, to state how rapid has been the increase in the price of land around the city, about the same distance from it, during the last fifteen years.

SAME.—A witness for the appellant having stated, on cross-examination, that he had within two years sold a piece of land, four and a half miles from the city, for $300 per acre, it was proper, on re-examination, to ask if he had not sold an adjoining tract, equally as good, for $125 per acre.

PRACTICE.—*Interrogatories to Jury.*—There is no error in refusing to send interrogatories to the jury, when presented after the argument is closed.

SAME.— *Witnesses.— Discretion.*—The court having notified the parties, before any evidence was offered, that no more than eleven witnesses, on certain questions, would be permitted, and then enforced the order, it was held to be within the discretion of the court, and not error unless an abuse of discretion appeared.

From the Johnson Circuit Court.

*B. Harrison, C. C. Hines, W. H. H. Miller, A. L. Roache* and *E. H. Lamme,* for appellant.

*S. Claypool, W. A. Ketcham* and *J. O. Moore,* for appellee.

BICKNELL, C. C.—The appellant appropriated land of the appellee for the use of its railroad; damages were assessed in favor of the appellee at $4,000; he appealed to the Supe-

rior Court of Marion county, alleging inadequate damages. A change of venue was taken to the Johnson Circuit Court, where a jury gave the appellee a verdict for $7,000. The appellant's motion for a new trial was overruled, judgment was rendered upon the verdict and this appeal was taken.

The only error assigned is overruling the motion for a new trial; the only reasons for a new trial, discussed in the appellant's brief, are:

1. Error in the ninth instruction.

2. Error in admitting certain testimony of Wm. Hadley.

3. Error in admitting certain testimony of Thos. Goodwin.

4. Error in admitting certain testimony of John Moore, Peter Kealing and David Brouse.

5. Error in excluding certain testimony of Wm. C. Smock.

6. Error in admitting certain testimony of John S. Spann, and in excluding other testimony of said Spann.

7. Error in refusing to require the jury to answer interrogatories.

8. Error in refusing to permit more than eleven witnesses to be examined on each side.

It appeared in evidence that the Pan-Handle and Junction railroads cross the appellee's land, side by side, in a straight line, nearly east and west, on a right of way about one hundred feet wide, which they bought and paid for, and had been using constantly for fifteen years; these roads go between the appellee's house on the north and his barn on the south; within one hundred feet of each of these buildings the right of way extends; there is a lane leading into the National road, which lane runs north and south, between the appellee's house on the west and his barn on the east, and the right of way of said two railroads crosses this lane, between said house on the north and said barn on the south.

The ground appropriated by the appellant for its main line is a strip seventy-five feet wide, along all the east line of appellee's land; said house and barn stand nearly midway between the east and west lines of appellee's land, somewhat

nearer to the west line, and upwards of seven hundred feet west of appellant's appropriation for its main line, which runs nearly north and south, crossing the Pan-Handle and Junction roads nearly at a right angle.

The ground appropriated by appellant for its switch begins at its main line, about seven hundred feet south of the Pan-Handle and Junction roads, and crosses appellee's land, curving northwesterly, and joins the right of way of the other two roads, about fifty feet east of the lane aforesaid. Appellee's land had been used as a farm; his west line is two and one-half miles east of the court-house in Indianapolis; and the claim was that the land was of special value for suburban residences. East of appellant's main line, and south of the Pan-Handle and Junction roads, is a little place called Stratford, having four or five houses.

The appellant's road is generally called "the Belt Road."

The 9th instruction was as follows: "As I have suggested, you can not allow Moore any future or contingent value that is in prospect for his land; yet it is proper, in assessing the damages of Moore upon the lands not appropriated, to consider the effect of the future occupation and use of the lands appropriated by the railroad company, upon the residue of the land, considered with reference to its condition, value, location and surroundings at the date of appropriation. It is proper to consider the condition of such land with reference to Stratford on the east, the public highway upon the north and south, the cutting of the land by the Pan-Handle and Junction railroads, and all the means of ingress and egress of Moore, to and from his lands, at the date of appropriation, together with all other elements of convenience and inconvenience, surrounding Moore's land, to assist you in determining the damage to the residue of Moore's land not appropriated by the Belt Railroad Company, at the date of the appropriation."

The appellant's counsel concede that thus far the 9th instruction is unobjectionable, but he claims that the concluding paragraph, in the following language, was wrong: "But

the condition of the Junction and Pan-Handle roads, at the date of appropriation, can only be considered in estimating the value of the ingress and egress, upon the east of Moore's land, to and from the residue not appropriated by the Belt road." Upon this it seems clear that, whether the land had special value as a site for suburban residences or not, if there were two railroads already there, crossing the plaintiff's land as hereinbefore described, and the Belt Road was to be near them, crossing both of them on plaintiff's land, and joining one of them with its switch, near the plaintiff's barn, then, in estimating the effect of the new road upon the value of land so situated, the existing condition and operation of the two roads already there ought to be considered in estimating the value of the land taken by the new road, and also the value of the remaining land; and it was error, and had a tendency to mislead the jury, to tell them that the condition of the existing roads could be considered only in reference to the ingress and egress upon the east side of said land.

Wm. Hadley, a witness for the appellee, had testified that Moore's land was worth $600 per acre, for the entire farm; on cross-examination, he said it could not have been sold for more than $200 an acre. He was then asked, on cross-examination, if he knew of any sales in that neighborhood at that rate, and he answered, "No."

Upon re-examination, the counsel for the appellee, over the objection of the appellant, was permitted to ask, and the witness was permitted to answer, the following question: "State whether or not any land could have been bought in that neighborhood, at less than $500 an acre, in July, 1877?" This was not a proper question; the matter under investigation was the value of Moore's land; what other land could be bought for might depend upon a great many circumstances, not affecting the appellee's land; the fact that an owner of land will not sell it for less than a given price, is no evidence of its value; he may not wish to sell it at all; and the opinion of the witness, that land in that neighborhood could not be

bought for less than $500 an acre, was either a merely speculative opinion, or, if founded on the information of others, it was hearsay. Where such evidence is improperly admitted, the presumption is that it misleads the triers of the fact, unless the contrary clearly appears. *King* v. *Enterprise Ins. Co.*, 45 Ind. 43; *Wiseman* v. *Wiseman*, 73 Ind. 112.

Thomas Goodwin was permitted, over the objection of the appellant, to state that, " since the finishing of the Belt Road, this part of the road, where it joins on, is almost constantly obstructed by locomotives, cars and smoke," and this witness was permitted, over like objection, to answer fully as to the obstructions upon the Pan-Handle and Junction roads between plaintiff's house and barn. The objection made to this testimony is, that these two roads had bought their right of way, and were entitled to use it themselves, and to permit other companies to use it, as fully as they pleased, and that such increased use could not be an element of damage in this case. But the testimony of Goodwin was competent, as tending to show the value of land already subject to such inconveniences, and also to aid the jury in determining the value of the ingress and egress to and from Moore's land on the east side. There was no error in admitting this testimony of Goodwin.

The witnesses John Moore, Peter Kealing and David Brouse were asked if they knew the value of the land in controversy. The appellant objected to the form of the question. He now claims that the question, in such a case, ought to be "as to the market cash value."

It is not necessary that the witness should be so asked; it is enough to ask him if he knows the value of the land; the value, in such a question, means the cash value; if the witness, in his answer, intends anything else, it can be shown upon cross-examination; but the general question, what is the value of land per acre, means, what is its cash value per acre. There was no error in this respect.

The appellant objected also to the following question, put by the appellee to John S. Spann:

"How rapid has been the increase in the price of land lying around and within two or three miles of the center of the city, during the last fifteen years?"

This question was put upon cross-examination. Spann was a witness for appellant; he had testified generally as to the demand for land about Indianapolis since the panic in 1873, and that the intrinsic value of Moore's land was $250 to $300 per acre; and that the damage to it by the construction of the Belt Road was $1,000. We think the question under consideration did not go beyond the reasonable limits of a cross-examination, and that there was no error in overruling the objection to it.

In cross-examination, this witness was asked by the appellee, whether in the past two years he had not sold a piece of land, about four and one-half miles from Indianapolis, for $300 an acre? He replied he had. Then, on re-examination, the appellant asked him whether he had not sold another tract, adjoining the former, and as good as the former, for $125? This question was objected to by the appellee, and was excluded by the court. The witness having been permitted to answer the question as to a sale of land in another locality for $300 an acre, we think he ought to have been permitted to answer the question as to a sale of adjoining land at $125 an acre. If there was any relevancy in the first question, there was as much in the second.

The argument of the cause began on the 27th of September and ended on September 28th. The court, on the former of these days, notified the counsel that "all instructions" must be handed to the court by ten o'clock P. M. of that day.

After the conclusion of the argument, the appellant's counsel requested the court to instruct the jury, if they should render a general verdict, to find specially upon particular questions of fact then submitted to the court to be put to the jury. See Practice Act, section 336.

The bill of exceptions shows that the court refused to submit said questions to the jury, "because they were not sub-

mitted in time to be properly considered by the court, and for not complying with the order of the court heretofore made," etc.

There is no error in refusing to submit interrogatories to a jury when they are presented after the commencement of the argument. *Glasgow* v. *Hobbs*, 52 Ind. 239. *A fortiori*, there is no error in refusing to submit them when presented after the conclusion of the argument. " The court below must decide whether an interrogatory propounded is relevant, properly framed, and presented in due time." *Nichols* v. *The State, ex rel.*, 65 Ind. 512. There was no error in the action of the court in this matter.

Before any witness had been examined, the court notified the parties that no more than eleven witnesses on each side should be examined " as to the value of the property in controversy, or the injury to plaintiff Moore's farm, by reason of the location and construction of the defendant's road." To this announcement the appellant's counsel at the time excepted, and, after examining the eleven witnesses allowed by the court, offered to examine two other witnesses, and to prove by them the value of plaintiff's land and his damages by the location and construction of the defendant's road. The court refused to hear any more witnesses.

There was no error in this. It was a matter within the discretion of the court, and the record shows no abuse of that discretion. *Gardner* v. *The State*, 4 Ind. 632. In *Hubble* v. *Osborn*, 31 Ind. 249, it was held to be an abuse of discretion to limit a party to one witness on the vital point of his case; but, in a case of this kind, there was no abuse of discretion in notifying the parties of the proposed limitation of the number of witnesses, and there is nothing in the record which shows abuse of discretion, in the subsequent refusal of the court to hear two more witnesses for the appellant, upon points upon which eleven witnesses had already been examined on each side. It requires a plain case of abuse of discretion to justify the reversal of a cause, for a matter depending upon dis-

cretion. *Morris* v. *Graves,* 2 Ind. 354; *Mulhollin* v. *The State,* 7 Ind. 646; *Trees* v. *Eakin,* 9 Ind. 554; *Coats* v. *Gregory,* 10 Ind. 345.

The motion for a new trial ought to have been sustained on account of the errors hereinbefore pointed out in the 9th instruction, and in the admission of part of Hadley's testimony, and in excluding the question put by appellants to John S. Spann, or the error in overruling said motion. The judgment of the court below ought to be reversed.

PER CURIAM.—It is therefore ordered by the court, upon the foregoing opinion, that the judgment of the court below be and it is hereby in all things reversed, at the costs of the appellee, and this cause is remanded for a new trial.

Petition for a rehearing overruled.