## Commonwealth *v.* A. J. Gibbons and Mark Rosenberry, Appellants.

*Criminal law—Evidence—Expert testimony.*

No clearly defined rule is to be found in the books as to what constitutes an expert.   Much depends upon the nature of the question in regard to which an opinion is asked.

Opinions of witnesses are in some cases admissible as evidence even when not coming properly under the head of expert testimony.

*Criminal law—Evidence of general and particular reputation.*

Defendants have a right to submit their reputation as peaceable, law abiding citizens as positive evidence and it is error to permit the commonwealth to seek to overcome the effect of this by proving a special and particular reputation as an abortionist, abortion being the crime charged

*Criminal law—Evidence as to character.*

In an indictment for procuring abortion evidence having been given as to defendant's general good character it was error to permit the commonwealth's witnesses, called in rebuttal, after stating that the character of defendant as a peaceful, law abiding citizen in his community was "bad" or "not above reproach" to answer affirmatively questions touching his particular reputation as a procurer of abortion.

*Criminal law—Discretion of court limiting number of witnesses.*

After a reasonable number of witnesses have been called, it is not aiding the administration of justice to multiply the proof, and the trial judge being better able to decide when to stop than the appellate court, his discretion will not be reviewed unless it is apparent that the defendant has been injured.

*Criminal law—Clerical error in docket entries—Q. S. and O.& T.*

The day of mere technicality is past, and, courts will look more at substantial justice than artificial nicety.  An assignment will not be sustained where the record shows that an indictment, trial and recognizance were had in the quarter sessions though the docket entries by clerical error were kept in the oyer and terminer.  The defendant was deprived of no constitutional right, and the amendment, to correct what was a clerical error, was properly allowed.

Argued Dec. 14, 1896.  Appeal, No. 76, April T., 1897, by defendants, from judgment and sentence of O. T., Greene County, April T., 1896, No. 2, on verdict of guilty.  Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.  Affirmed as to defendant Rosenberry and reversed as to defendant Gibbons.

Indictment for procuring abortion.  Before CRAWFORD, P. J.

The facts sufficiently appear from the opinion of the Superior Court.

*Errors assigned* were, inter alia, (1) admission of evidence on behalf of the commonwealth, of Mrs. McMasters, a midwife, touching the stains on clothing of prosecutrix washed by witness, and permitting witness to state her opinion that prosecutrix was in the family way; (2–9, 11).  The defense having introduced evidence as to general good character; errors are assigned to permitting the commonwealth in rebuttal to interrogate certain witnesses as to the particular and special reputation of Dr. Gibbons as an abortionist; (10) in limiting the number of witnesses to be called by defendant as to reputation of defendant Rosenberry as a peaceable, law abiding citizen; (14) the oyer and terminer had no jurisdiction.

*Jas. E. Sayers*, with him *R. F. Downey* and *Joseph Patton*, for appellants.—As to 1st assignment and the character of the commonwealth's witness as an expert cited: Carter v. Boehm, 1 Sm. L. C. (7th Am. ed.) 834, note; Bell on Expert Test., 13. As to the rebuttal evidence involved in admission of testimony as to defendant's special reputation as an abortionist, cited: Wike v. Lightner, 11 S. & R. 198; Snyder v. Com., 85 Pa. 519; Chess v. Chess, 1 P. & W. 41.  The exception to the rule is where the crime offered in evidence has a direct tendency

to prove the particular crime charged. It must belong to the res gestæ, and be one of the undesigned incidents illustrative of the particular litigated act: Shaffner v. Com., 72 Pa. 65; Com. v. Pipes, 158 Pa. 25; Wharton's Crim. Ev., 9th ed. sec. 27. The proper test is reputation, not single acts: Elliott v. Boyles, 31 Pa. 65; Goersen v. Com., 99 Pa. 388. As to the fourteenth assignment consent cannot give jurisdiction, and the proceedings were a nullity: Mills v. Com., 13 Pa. 631.

*J. B. Donley*, with him *H. J. Ross*, district attorney, for the commonwealth.—Whether a witness may give his opinion on a state of facts described by him is a matter very much in the discretion of the court below: Oil Co. v. Gilson, 63 Pa. 146; Towboat Co. v. Starrs, 69 Pa. 36; Sorg v. Congregation, 63 Pa. 156; Company v. Coon, 10 W. N. C. 502.

The court had power to correct the mistake in its own record: Cohn v. Scheuer, 115 Pa. 183; and it is not the subject of appeal: Kendig's Appeal, 82 Pa. 68.

OPINION BY ORLADY, J., January 19, 1897:

The defendants were convicted of procuring an abortion on the body of one Myrtle Waters, and fourteen assignments of error are urged for our consideration on this appeal.

The first refers to receiving in evidence the opinion of one Mrs. McMasters as to what produced the condition of certain soiled clothing which she had washed. This witness testified she had been present as nurse at over one hundred cases of childbirth; had seen Myrtle Waters prior to her illness and from her appearance judged she was in the family way far enough to show it; had washed a bedquilt and other clothing taken from the bed in which she had laid; that they were in a bad condition, "very bad and very dirty and darklike colored in places." "I cannot tell just exactly what it was made by, but it was just the color I have always washed in them kind of clothes. Looked like blood in some condition."

The commonwealth then asked, "Mrs. McMasters, from your examination and cleansing of these clothes, and your experience in childbirth and delivery and washing such clothes, what in your opinion caused the clothing to be soiled in the way it was and to the extent it was? This for the purpose

of showing that Miss Waters had been pregnant and had either had a miscarriage or childbirth just previous to the time the witness spoke of, as testified to by Miss Waters."

Objected to as incompetent and irrelevant. It is a disputed fact in regard to the clothing whether it was that of Miss Myrtle Waters or not, and the further fact that it was a mere expression of opinion asked for on that subject.

By the Court: I understand her to say she washed these clothes, and had experience in childbirth and so on. We will permit her to do that.

The testimony as applied to the facts stated was not incompetent and irrelevant but highly important and proper as corroborating the prosecutrix in a very material matter. The only merit the objection had, was to her competency to express her opinion as to the cause producing the soiled condition of the clothing taken from the bed.

The examination should have proceeded further to more fully explain the condition of the clothing, the facts and circumstances in detail, the presence or absence of foreign matters, but the omission of the commonwealth was largely relieved by the cross-examination.

The witness did not pretend to say what had produced the stain, but " it looked like blood in some condition; " and that it was different in amount, and not the color of the menstrual discharge.

No clearly defined rule is to be found in the books as to what constitutes an expert. Much depends upon the nature of the question in regard to which an opinion is asked: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Towboat Co. v. Starrs, 69 Pa. 36; Kraut v. Railway, 160 Pa. 327.

The rule governing the action of the court is clearly expressed in Graham v. Penn. Co., 139 Pa. 149, " That the opinions of witnesses are in some cases admissible as evidence even when not coming properly under the head of expert testimony, has long been established in practice. In several classes of questions the line between witness's judgment or opinion and his affirmation of a fact is so indistinct that it cannot be marked out in practice.

" Such are questions of identity of persons or things, of the lapse of time, of comparative shape, or color, or sound, of expres-

sion and, through it, of meaning, etc.    In all these, however positively the witness may affirm facts, what he says is largely his opinion, but so blended with knowledge and recollection that the line where opinion ends and fact begins cannot be distin-guished.    Hence both must be admitted or both excluded, and to do the latter is often to shut out the only light the case admits of . . . . where the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other are not admissible," followed in Dooner v. Canal Co. 164 Pa. 17.    In Gaines v. Commonwealth, 50 Pa. 319, and in McLain v. Commonwealth, 99 Pa. 86, a non-expert witness was permitted to testify as to the existence of human blood from stains, but only after a full detailed statement of the facts.    This assignment is not sustained.

The second to ninth and eleventh assignments relate to the admission in evidence of certain answers from as many witnesses, called by the commonwealth in rebuttal to answer a number called by the defendant, on the question of character, and all in substance the same.    After stating that the character of Dr. Gibbons as a peaceable, law abiding citizen in his community was " bad " or " not above reproach," they were permitted by the court to answer in the affirmative, questions, viz : " Have you heard general talk that Dr. Gibbons was guilty of abortion ?    Is not the general talk to the effect that he has been practicing abortion in the neighborhood?    Is not the general reputation in that neighborhood that he is an abortionist?    Has there not been considerable talk for the last number of years connecting Dr. Gibbons with the crime of abortion ? "    The defendant excepted to each and the court in answer to the fifth point submitted by defendant gave the reasons moving it, in receiving the evidence : " The force of the testimony of the witnesses in this line is their knowledge of the general character or reputation of the defendants or either of them in the neighborhoods in which they live, as peaceable and law abiding citizens, not what particular fact they or either of them may know with reference to it.    It is not sought by the commonwealth to rebut the evidence of the defendant's good character by suggesting any fact or circumstance alone, but by what is

generally said or reported about that fact or circumstance as going to make up these defendants' reputation as law abiding or peaceable citizens in that community."

The evidence in rebuttal as to the character of Dr. Gibbons, took a much wider scope than is permitted in any reported case. It was a collateral attack which could not be expected nor defended against. It necessarily had great weight, for if one be shown to be guilty of another crime, equally heinous, it will prompt a more ready belief that he might have committed the one with which he is charged; it therefore predisposes the mind of the juror to believe the person guilty: Shaffner v. Commonwealth, 72 Pa. 65; Commonwealth v. Snyder, 85 Pa. 519.

The defendants had a right to submit their reputation as peaceable, law abiding citizens as positive evidence: Commonwealth v. Cleary, 135 Pa. 64.

It was sought to overcome the effect of this by proving the opposite reputation, and, in addition, that as to Dr. Gibbons, he had a special and particular reputation as an abortionist.

Under some circumstances a distinct crime unconnected with the one laid in the indictment may be given in evidence; to establish identity, prove knowledge, motive or design, etc.: Commonwealth v. Pipes, 158 Pa. 25.

And in actions of slander, to mitigate the damages, the rule is qualified, but no case cited or found will sustain the contention of the commonwealth on this branch of the case, and these assignments of error are sustained.

The tenth assignment is not sustained; even if the number of witnesses had not been agreed to, it was clearly within judicial discretion to limit the number of witnesses on a particular phase of the case. After a reasonable number has been called, it is not aiding the administration of the law to multiply the proof, and the trial judge is better able to decide when to stop than an appellate court. Unless it is apparent that the defendant has been injured, the decision will not be disturbed, and we do not discover any such injury in this record: Union etc. Co. v. Moore, 80 Ind. 458; Everett v. Union R. R. Co., 59 Iowa, 243; Hilliard v. Beattie, 59 N. H. 462.

The charge of the court and answers to the points covered by the twelfth and thirteenth assignments were fair, and they are not sustained.

The fourteenth assignment is not sustained, as the record shows the cause was tried in the quarter sessions and recognizance and appeal filed therein. The indictment was found in that court, and though the docket entries were kept in the oyer and terminer, it was not suspected by anyone until the record was made up for certification to this court that the case had been tried therein. The defendants in this respect were not deprived of any constitutional right. Both courts were held by the same judge, and a single clerk fills the office of clerk in each. The amendment to correct what was a clerical error was properly allowed. The day of mere technicality is past, and courts will look more at substantial justice than artificial nicety: Brown v. Commonwealth, 73 Pa. 321.

This record as to Mark Rosenberry is free from error. As to him the judgment of the court is affirmed, and the record remitted that the sentence imposed may be carried into effect. The assignments of error sustained apply only to A. J. Gibbons, the other defendant. As to him the judgment is reversed and a venire facias de novo awarded.