## Ries *v.* Ries's Estate, Appellant.

212

Argued April 13, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Adrian H. Jones,* for appellant.

*James P. Costello, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 25, 1936:

This is an appeal in an interpleader proceeding to determine the ownership of a savings bank deposit of approximately $3,500 in the name of Anna M. Ries, who was 87 years of age at the time of her death. Mary Ries, her daughter, claimed the fund as a gift. The other children, through the executors of the estate, resist the claim. The mother and daughter lived together harmoniously for many years after the other members of the family had married. She took care of her mother for at least twenty years. There was considerable feeling among decedent's children. All had displayed animosity toward Mary and attempted to show cruelty on her part toward the mother.

Her claim is based on a written order on the bank, accompanied by delivery to her of the deposit book. The order reads as follows:

"Hazleton National Bank                    Oct. 2, 1933
I give all the money to my daughter Mary that I
have in your bank pay it to her

                                                    her
"Anna Martha X Ries
                                                    mark

Mary Ann Scowcroft
Emma Ann Davis."

She presented the order to the bank for payment for the first time eight days after decedent's death. The bank refused to pay it.

Appellant averred lack of mental capacity, undue influence, forgery in procuring the order, and no delivery of the deposit book. The court instructed the jury that if decedent had executed the written order and delivered it along with the deposit book to Mary with intent to make a gift of the funds on deposit, the burden was on the contestants to show undue influence, lack of mental capacity or fraud. The jury found for claimant.

The errors assigned in this appeal are the refusal to charge that due to the relationship existing between decedent and her daughter, the transaction was presumed void and the burden rested on claimant to show that it was fair and voluntary; and that since the written order was not drawn for the exact amount standing to the credit of decedent, her death revoked the gift. Other trial errors assigned are the refusal to admit declarations alleged to have been made by decedent in the absence of Mary, complaining of her conduct toward the declarant.

To constitute a valid gift *inter vivos* two essential elements must appear: a present intention to make the gift and, at the same time, an actual or constructive delivery to the donee as divests donor of all dominion over the subject and invests donee therewith *(Yeager's Est., 273*

Pa. 359, 362; *Reese v. Phila. Trust Co.,* 218 Pa. 150, 158) ; the burden of proof is upon claimant to establish these elements *(Kaufmann's Est.,* 281 Pa. 519, 531) ; and facts establishing undue influence or lack of mental capacity must be affirmatively shown by those attacking the transaction: *Weber v. Kline,* 293 Pa. 85, 87; *Northern Trust Co. v. Huber,* 274 Pa. 329, 333.

The court below charged the jury to this effect. The record reveals that claimant, the appellee, met this burden by showing a writing executed by decedent manifesting an intent to make a gift of all the money and ordering the bank to pay it. It was testified that at the same time she handed her the deposit book. There was also testimony that Mary's mother said "all the money in the bank . . . was for her [Mary] . . . so that she would have something to care for herself because the others [her children] were all married and had homes of their own." This was clear, convincing and persuasive evidence of an intent to make a gift and a delivery divesting the donor of all control over the funds.

It is argued that appellee had to go further and show affirmatively that the gift was free, open, voluntary and well understood. Appellant relies mainly on *McConville v. Ingham,* 268 Pa. 507, where we recited the principle that if the relationship existing between the alleged donor and donee appears to be of such a character as to render it certain they did not deal on equal terms, the transaction is presumed void, and the burden rests upon appellee to show affirmatively that no deception was used, and that all was fair and open. This is a partial quotation from *Stepp v. Frampton,* 179 Pa. 284, 289. These cases are clearly distinguishable from the case at bar. In the Stepp case a bill in equity was brought to secure the cancellation of an assignment of mortgages. The parties were strangers and did not deal on equal terms, which is not true in this case. The rule there stated has no applicability here. In the McConville case the plaintiff, a widow, aged 92, who had several children

and grandchildren, delivered checks to her granddaughter, aged 23, for a large part of her small estate, which she deposited in her own instead of her grandmother's name, as the latter contended she ordered. It appeared from the claimant's own testimony that her grandmother was weak and incompetent. Furthermore it was very unnatural for her to give the larger part of her estate to one of the grandchildren to the exclusion of all her own children. This court very properly held that the burden rested on the granddaughter to establish affirmatively that it was fair and open, because of the donor's conceded mental incapacity and the suspicious circumstances surrounding the transaction making it probable unfair advantage had been taken.

In the instant case the relationship was that of mother and daughter, and the evidence shows they lived together for many years after the other children had gone. The action of decedent must be regarded as natural under the circumstances. The rule is that where the donor and donee are strangers the presumption against a voluntary transfer is greater than where a more intimate relationship exists between them. When the gift is from parent to child, the transaction is not unusual and no presumption against invalidity arises: *Kaufmann's Est.,* supra. In *Northern Trust Co. v. Huber,* supra, an old and feeble man turned over to his son and daughter-in-law some bonds and cash without words showing an intention to limit their rights of ownership. This court held that by reason of the relationship existing between the parties no presumption against the invalidity of the gift arose, and the burden was on those attacking the transaction to establish affirmatively facts showing undue influence. See also *Weber v. Kline,* supra.

The court below actually placed a heavier burden on appellee than the law requires. It charged the jury to "Bear in mind that the burden is upon the plaintiff [appellee] to show that all was fair, open, voluntary, and

well understood." The assignments of error as to the burden of proof are dismissed.

Appellant also contends that the delivery of the written order along with the deposit book did not serve to pass title to appellee and divest decedent of all control over the funds on deposit. It is argued that as the delivery of a check is not an executed gift of money but merely constitutes an order to pay which is revoked by the death of the donor before actual payment, the same rule applies to the writing before us. *Estate of Eshenbaugh,* 114 Pa. Superior Ct. 341, is cited in support of this contention. The court there held that the death of the donor prior to actual payment of the checks revoked the gift, since the checks were not for the full and exact amount of money in the bank. The written order here was not blank as to amount but covered all moneys on deposit in the bank.

While it is true that the delivery of a bank deposit book, though coupled with words manifesting intent to make a gift, will not pass title to a bank account and constitute a valid gift *(Walsh's App.,* 122 Pa. 177; *Grigonis's Est.,* 307 Pa. 183), it is established that where a check is drawn on a bank for the full amount on deposit and the drawer intends to make a gift of the entire bank account, it will operate as an equitable assignment of all the funds on deposit: *Taylor's Est.,* 154 Pa. 183; *Campbell's Est.,* 274 Pa. 546. The facts in the case at bar closely parallel those in *Campbell's Estate.* There a decedent, shortly prior to his death, drew a check to the order of his brother for the exact amount of his savings account, declaring that he wanted his brother to have the money. The check with the bank deposit book was delivered to the brother before decedent's death, but was not presented for payment until after his death. This court held that the transaction constituted a valid gift *inter vivos.* The only factual difference between that case and the present one is that here the order called for

payment of "all the money" decedent had on deposit instead of naming the exact amount in figures. It was equivalent to saying, "my entire balance of money in your bank," and has the same effect as if the exact figures had been inserted. It was an equitable assignment of her entire account coupled with a clear and unequivocal manifestation of intent to make a gift. This was sufficient to pass title and invest the daughter therewith. A valid transfer may be made by assignment or other writing indicating a present intention to vest title in the donee: *Mardis v. Steen,* 293 Pa. 13; *Reap v. Wyoming Valley Trust Co.,* 300 Pa. 156.

Appellant further asserts that the court below erred in refusing to admit declarations made by decedent indicating that Mary was abusive to her and tried to compel a surrender of the money and that she was afraid of her daughter. They argue that the declarations are admissible on the ground that they negative the existence of a donative intent and are probative of undue influence. Careful consideration of both these contentions will show they cannot be sustained for several reasons.

At best, this type of evidence is dangerous: see *Swope v. Donnelly,* 190 Pa. 417, 421. Where there is grave doubt as to its relevancy, the action of a trial court in refusing to admit it cannot be considered reversible error, especially where other evidence exists unequivocally showing the donor's intention at the time of the gift. Self-serving declarations made in the absence of the adverse party neither clarifying the meaning of an ambiguous act nor indicating a different intent than that already plainly expressed, and too remote to be of evidential value, are inadmissible. Such declarations are admissible for the purpose of showing fraud, mistake, forgery or undue influence in corroboration of other evidence, but they are not to be received as direct proof of the invalidity of a writing.

In the case at bar the declarations are too remote to

be relevant. Most of them were made long before the time the gift was made. The only ones which occurred at all proximate in time to the transaction in dispute were those made to a laundress of decedent on or about September 21, 1933. They do not have any bearing on the question whether decedent intended to make a gift on October 2, 1933. We have held that declarations relating to testamentary capacity to be admissible must cover the period when the testament was executed. Likewise, declarations concerning a donor's state of mind must cover a similar period, especially where the transaction is between parent and child, as family quarrels are so often soon followed by complete domestic harmony. In *Swope v. Donnelly*, supra, a will dated in December was attacked on the ground of forgery. Its execution was proved by a number of witnesses. This court held that declarations of the decedent made in the preceding October as to existence and provisions of another will, and her satisfaction therewith, were inadmissible. In the instant case the declarations are not so connected with the alleged gift in point of time as to justify the inference that they indicate the state of mind of decedent when the gift was made. Under the circumstances, on the ground of remoteness, their exclusion was proper.

Aside from this there is another ground justifying the refusal of the lower court to admit them. Appellee proved a writing evincing an intent to give the money to her and ordering the bank to pay it. The donative intent expressed in the written order is clear and convincing. There is no ambiguity whatsoever. There being the presumption that the gift was voluntary, as well as evidence to sustain that fact, the only purpose which could possibly have been served by the introduction in evidence of these extrajudicial declarations would have been to show fraud, mistake, forgery or the exercise of undue influence. The rule is firmly established that dec-

larations of a testator to prove such facts are only admissible in connection with other more direct evidence for the purpose of corroboration: *Herster v. Herster,* 122 Pa. 239, 256; *Swope v. Donnelly,* supra, at page 421. Here there is no direct evidence of undue influence. In the absence of such evidence the declarations of decedent were inadmissible. The quality of the excluded evidence did not indicate undue influence, and a finding of undue influence based on such testimony would have been erroneous.

In support of the admissibility of the declarations appellant cites *Kaufmann's Est.,* supra. We there stated that while self-serving declarations ordinarily are not admissible to prove title in declarant, previous declarations manifesting a donative intent or lack of such purpose are receivable. That case involved an act of delivery which in itself was not free from ambiguity, and it was necessary to admit declarations of the decedent bearing on the animus with which he acted in delivering the subject-matter of the gift. The declarations related directly to the transaction in issue and were not remote in point of time. The decedent's secretary testified that he had said, "He intended to give the notes and stocks to Lillian." But in the instant case the intention with which delivery was made is certain. The declarations at most indicate abusive conduct toward decedent on the part of her daughter and are not probative of a donative intent or lack of such purpose.

The record reveals that several witnesses for appellant were given wide latitude in relating abuses of decedent by appellee and conduct of decedent which might have a bearing on mental capacity. It was within the discretionary power of the court below to place a reasonable limitation upon proof pertaining to this particular phase of the case. After a reasonable amount of evidence has been produced in support of a point in issue, the administration of justice is not aided by its excessive multiplication. The decision of questions of this type is a

matter which the trial judge is peculiarly fitted to pass upon and will not be disturbed on appeal unless it is apparent that there was an abuse of discretionary power: *Com. v. Gibbons,* 3 Pa. Superior Ct. 408, 413. The record reveals no such abuse. The assignments of error relating to the exclusion of the declarations must be dismissed for this reason and those already mentioned.

Appellant complains that the trial court made many misleading statements prejudicial to it. Although this question is not supported by an assignment of error, we have examined the charge and the record; there are no misstatements of fact of the slightest consequence. The court in precise language cautioned the jury to take the testimony of the witnesses and not as related by it. At the conclusion of its charge, the court gave the parties opportunity to make suggestions, and having failed to ask for corrections, appellant cannot now object to errors not basic in character. See *Broomall v. P. R. R. Co.,* 296 Pa. 132, 140.

Judgment affirmed.