## Rishel Estate

*Wray G. Zelt, III,* for petitioner.
*James C. McCreight,* for respondent.

RODGERS, *J.,* October 29, 1979—This matter comes before the court on the petition of John R. Evans, Sr., administrator c.t.a. of the estate of Benjamin F. Rishel, deceased, requesting that the court direct the respondent, Marlene S. Rager, to turn over the balances in two joint checking accounts at the time of death to the estate.

For reasons hereinafter stated, the petition is denied.

Benjamin F. Rishel, a resident of East Bethlehem Township, Washington County, Pa., died on April 17, 1978, leaving to survive him seven grandchildren, the children of his deceased daughter, Mabel Evans, as well as eight great-grandchildren.

Rishel's probate estate was nominal, the proceeds of a $2,000 life insurance policy, two old trucks, and miscellaneous items of small intrinsic value.

His jointly owned assets included his home in East Bethlehem Township valued at $10,000, a vacant lot in Deemston valued at $4,500 and the two checking accounts here at issue, one in the First National Bank of Washington, Fredericktown office, with a balance of $26,809.71, and the other at the Gallatin National Bank, the Jefferson, Pa. office, in the amount of $616.62.

About May 16, 1977 Mabel Rishel Evans, the only child of decedent, Benjamin F. Rishel, died testate, leaving the remainder of her estate to three of her minor children, in trust during their minority. On January 12, 1978 Benjamin F. Rishel made his will, leaving his entire estate in equal shares to his seven grandchildren and two of his great-grandchildren.

On January 24, 1978 Benjamin F. Rishel and Marlene S. Rager, respondent, opened a joint account at the Jefferson office of the Gallatin National Bank. Benjamin F. Rishel was the surviving owner of the predecessor account, which had been jointly owned with his daughter, Mabel Rishel Evans, the balance in the account on January 24 being $80.09.

The deposit agreement stated:

"If this account is joint, the parties agree that all

deposits now or hereafter made in it shall be owned by the parties as tenants by the entireties with the right of survivorship and not as tenants in common if the parties are husband and wife, and as joint tenants with the right of survivorship and not as tenants in common if the parties are not husband and wife, and in either case shall be withdrawable by appropriate order signed by either of us and upon the death of either the survivor shall be the sole owner of said account and of the balance thereof."

On January 25, 1978 a signature card and depositor's contract was duly executed by Marlene S. Rager and Ben Rishel in the name of Marlene S. Rager or Ben Rishel in the Fredericktown office of the First National Bank & Trust Company of Washington, Pa. with an initial cash deposit of $8,000.

The pertinent provisions of the depositor's contract were:

"TO FIRST NATIONAL BANK & TRUST CO., WASHINGTON, PA.

"You are authorized to recognize any of the signatures subscribed above in the payment of funds or the transaction of any business for this account. It is agreed that all transactions between you and the above signed shall be governed by the contract printed on the reverse side of this card.

"The above signed, joint depositors, hereby agree each with the other and with you that all sums now on deposit or heretofore or hereafter deposited by either or both of said joint depositors with you to their credit as such joint depositors with all accumulations thereon, are and shall be owned by them jointly, with the right of survivorship, and be subject to the check or receipt of either of them or

the survivor of them and payment to or on the check of either or the survivor shall be valid and discharge you from liability.

"Each of the above signed appoints the other attorney, with power to deposit in said joint account moneys of the other and for that purpose to endorse any check, draft, note or other instrument payable to the order of the other or both said joint depositors.

"Payment to or on check of the survivor shall be subject to the laws relating to inheritance and succession taxes and all rules and regulations made pursuant thereto.

"Your rights or authority under this agreement shall not be changed or terminated by us or either of us except by written notice to you which shall not affect transactions theretofore made."

About January 25, 1978, also, approximately $2,000 in cash was deposited in the joint account at the Gallatin Bank.

About February 6, 1978 Benjamin Rishel closed a joint account which had been in his name and in the name of petitioner, John R. Evans, and the proceeds of this account, estimated to be about $14,000 was deposited by Rishel in the joint account with Marlene Rager at the First National Bank, Fredericktown office.

On February 8, 1978 Rishel opened a joint account with Elsie Lewis, a friend and neighbor, at the Fredericktown office of the First National Bank with an initial deposit of about $5,200 and Rishel deposited an additional $6,800 in the joint account with Lewis on February 10, 1978. Elsie Lewis testified this joint account with Ben Rishel was for the purpose of paying Rishel's bills, that she did not regard herself as an owner of this account, and

about April 3, 1978 the balance in the joint account of Lewis and Rishel, at Rishel's request, was transferred by check of Rishel to the joint account of Rishel and Marlene Rager.

On or about March 9, 1978 Rishel executed and delivered a deed naming himself and Marlene Evans Rager grantees, "as joint tenants with the right of survivorship and not as tenants in common," conveying his dwelling house in Millsboro, and a vacant tract of about 9.6 acres in the Borough of Deemston.

About February, 1978 Benjamin Rishel, who had been living in his own home at Millsboro, in East Bethlehem Township, went to live with his granddaughter, Marlene Rager, and her husband at Mather, Pa. and he died on April 17, 1978.

Petitioner, Evans, claims that the two checking accounts, in the joint names of Ben Rishel and Marlene Rager at Rishel's death, were the sole property of the estate, that they were convenience accounts, and that Rishel had no intention of making a gift of any part of these accounts to the respondent, Rager.

There is no claim here of fraud or undue influence, and no evidence of any mistake, either in the conveyance of the real estate into joint names, or the opening of the two checking accounts in joint names. Petitioner has made no objection to the transfer of the real estate by the decedent during his lifetime into joint names with his granddaughter, Marlene Rager.

The gist of petitioner's argument is that all of the funds in both joint accounts belonged originally to decedent, Benjamin F. Rishel; that about $12,000 in the joint account at the First National Bank & Trust in Fredericktown was from a convenience account, admitted by Elsie Lewis to belong wholly to

decedent; that decedent in his will treated each of his grandchildren equally; that if the joint checking accounts are not made a part of his estate, his other grandchildren will receive practically nothing; and that on several occasions in 1978, especially at the time he made his will in January, 1978, Rishel had said that he wanted to treat all of his grandchildren equally.

The petitioner, Evans, called respondent, Rager, as of cross-examination. She readily admitted that she had not made any of the deposits in either checking account from her own funds; that some of the funds had previously been in a joint account in the name of Rishel and his daughter, Mabel Evans, respondent's mother; and that about $12,000 previously in the joint account of Rishel and Elsie Lewis had been deposited in the joint account at Fredericktown. However, she also testified without contradiction that Benjamin F. Rishel never said that the accounts in her name and Rishel's name were to be convenience accounts for the payment of Rishel's bills. In fact, she testified that no checks were drawn on the Fredericktown account in the First National Bank from the time it was opened in January, 1978 until decedent's death in April of 1978; that checks were drawn on the smaller account at the Gallatin Bank for decedent's benefit, and, with decedent's consent, for herself as well. She said that Rishel did not believe in savings accounts; that Rishel was concerned that his son-in-law, David Evans, might attempt to attach funds, which had been in the name of Rishel and his daughter, Mabel; and that he wanted Marlene Rager's name on these accounts, but she did not know why Rishel had specified her as a joint owner.

The applicable law is set forth at 20 Pa.C.S.A. §6304:

"(a) Joint account.—Any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created. If there are two or more surviving parties, their respective ownerships during lifetime shall be in proportion to their previous ownership interest under section 6303 (relating to ownership during lifetime) augmented by an equal per capita share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties.

". . .

"(c) Other cases.—In other cases, the death of any party to a multiple-party account has no effect on beneficial ownership of the account other than that the rights of the decedent become part of his estate.

"(d) Change by will prohibited.—A right of survivorship arising from the express terms of an account or under this section, or a beneficiary designation in a trust account cannot be changed by will."

The Official Advisory Committee Comment says this:

"The effect of (a) of this section, when read with the definition of 'joint account' in Section 6301(4), is to make an account, payable to one or more of two or more parties, a survivorship arrangement unless 'clear and convincing evidence of a different contention' is offered.

"The underlying assumption is that most persons who use joint accounts want the survivor or survivors to have all balances remaining at death. But

use of a form negating survivorship would make (c) of this section applicable. Thus, a safe nonsurvivorship account form is provided. Consequently, the presumption stated by this section should become increasingly defensible."

These sections are derived from Article 6 of the Uniform Probate Code, 8 U.L.A. §6-104.

A comprehensive note, The Pennsylvania Law of Joint Bank Accounts: The Need for Revision, 47 Temp.L.Q. 107 (1973), reviews the Pennsylvania authorities, the statutory treatment of joint bank accounts in the State of New Jersey, and the provisions of the Uniform Probate Code.

The multiple-party accounts act, 20 Pa.C.S.A. §6301 et seq., does not adopt the conclusive presumptions of the New Jersey statute.

However, it does set forth new rules of substantive law relating to joint accounts. It has been the law that where a donee depositor can produce a bank signature card, executed by both the donor and the donee depositor, the card is viewed as prima facie evidence of the gift, embodying present donative intent, constructive delivery, and a present transfer of such control to the donee as is consonant with joint ownership: 47 Temp.L.Q., at 117. Section 6303(a) of the multiple-party accounts act says this:

"Joint account.—A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent."

The Official Advisory Committee Comment says this:

"This section derives from Section 6-103 of the

Uniform Probate Code. The Commissioners' comment to that section states, in part, that: This section reflects the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership. The assumption may be disproved by proof that a gift was intended."

Section 6304 of the multiple-party accounts act clearly states that any sum remaining on deposit at the death of a party to a joint account belongs to the surviving party as against the estate of the decedent, unless there is clear and convincing evidence of a different intent at the time the account was created.

Petitioner here failed to produce such clear and convincing evidence. Petitioner claims that the will made by decedent in January of 1978 clearly shows his intent to treat his heirs equally. In fact, the will does no such thing. It singles out two of his eight great-grandchildren as beneficiaries, disinheriting the rest. Further, the will was made at a time when his real estate was still in his own name; some of his bank accounts were owned by him as the surviving joint tenant with his deceased daughter; and he was in possession of substantial cash. Further, the multiple-party accounts act, section 6304(d), states that "a right of survivorship arising from the express terms of an account or under this section . . . cannot be changed by will."

The vague expressions, attributed to decedent, that he wanted to treat all of his grandchildren alike were not clear and convincing evidence of such different intent, at the time these joint accounts

were created in the latter part of January, 1978. The fact that some of the funds in these joint accounts were apparently from a prior convenience account, in the name of decedent and a neighbor, unrelated to him, is not probative of decedent's intentions at the time he opened these accounts with his granddaughter. Respondent has paid the inheritance tax on all of the jointly owned assets, has paid the funeral bill, and has spent about $5,000 from her own funds.

Decedent created a joint tenancy with Rager, with the right of survivorship of all of his real estate in March of 1978, a conveyance to which no objection has been made.

Whatever may have been decedent's intentions on January 12, 1978 when he executed his will, there was no clear and convincing evidence that, when he opened these joint accounts with Rager two weeks later, and created a joint tenancy with Rager in his real estate eight weeks later, that he did not intend that his granddaughter, Marlene, should become the sole owner upon his death, as the surviving joint owner.

Gladowski Estate, 483 Pa. 258, 396 A. 2d. 631 (1979), is clearly distinguishable from the instant case. In Gladowski, the surviving joint tenant testified that the joint bank account was opened as a convenience bank account, and that her father had intended, at the time the account was opened, that it be equally divided among his children, but later allegedly changed his mind. In this case, the respondent unequivocally testified that neither account was intended to be a convenience account for her grandfather, that, in fact, none of the moneys in the Fredericktown account were used to pay her grandfather's bills, and that the smaller amount in

the Gallatin account was used not only for the grandfather's benefit, but for her benefit as well during the grandfather's lifetime.

## ORDER

And now, October 29, 1979, in accordance with the foregoing opinion, the petition of John R. Evans, administrator c.t.a. of the estate of Benjamin F. Rishel, to turn over to him the balances in the checking accounts at the First National Bank and Trust Company of Washington, Pa., at Fredericktown, Pa., and the Gallatin National Bank, at Jefferson, Pa., in the joint names of Benjamin F. Rishel and Marlene Rager, is denied.

RODGERS, *J.*, May 19, 1980—This matter comes before the court en banc on exceptions filed by petitioner, John R. Evans, Sr., administrator of the estate of Benjamin F. Rishel, deceased, to the opinion and order of the hearing judge, Judge Rodgers, denying the petition of the administrator to turn over to him the balance in two checking accounts in the joint names of Benjamin F. Rishel and respondent, Marlene S. Rager.

The facts set forth in the opinion of the hearing judge are adequately supported by competent evidence admitted at the hearing.

Petitioner claims the hearing judge erred in failing to find a confidential relationship existed between respondent, Marlene S. Rager, and Benjamin F. Rishel, since deceased, when the joint bank accounts were opened on January 24 and January 25, 1978, and that proof of such confidential relationship shifted the burden to the donee, Rager, to show that the gift was free of any kind of undue influence or deception.

Petitioner cites Clark Estate, 467 Pa. 628, 359 A. 2d 777 (1976), in support of his position. In Clark Estate, supra, the contestant alleged and proved undue influence showing both a greatly weakened intellect and a confidential relationship at the time the gift was made. This is fully explicated in In Re Estate of Clark, 461 Pa. 52, 334 A. 2d 628 (1975), involving a will contest between the same parties.

In the case at bar, petitioner neither alleged nor proved undue influence.

Witnesses called by petitioner himself stated that Benjamin F. Rishel was a strong-minded man even close to death, that his mental condition was good, that respondent, Rager, did not even begin to help Rishel with his financial affairs until February, 1978, after the joint accounts were opened, and that at all times respondent, Rager, took instructions from Rishel, rather than vice versa.

Indeed, at the crucial time, on January 24 and 25, 1978, when the joint accounts were opened, Rishel lived next door to Sue A. Evans, wife of one of the beneficiaries under the will, while respondent, Rager, lived several miles away.

There was no evidence that at the time the joint accounts were opened or later that respondent, Rager, exercised "an overmastering influence" or that Rishel was in a position of "weakness, dependence or trust."

Petitioner, both in his pleadings and in the evidence offered at hearing, tried only to show that no gift was intended, that the accounts were convenience accounts, and, indeed, the first time petitioner even mentioned "confidential relationship" were in the exceptions filed after the order made by the hearing judge.

Section 6304 of the multiple-party accounts act, 20 Pa.C.S.A. §6304, clearly states that any sum

remaining on deposit at the death of a party to a joint account belongs to the surviving party as against the estate of the decedent, unless there is clear and convincing evidence of a different intent at the time the account was created.

Petitioner offered no evidence as to the intent at the time these accounts were created on January 24 and January 25, 1978.

One of petitioner's witnesses testified he was present when Mr. Rishel's will was drawn on January 12, 1978, in which he left his estate in equal shares to his seven grandchildren and to two of eight great-grandchildren.

In the case of Ries v. Ries's Estate, 322 Pa. 211, 218, 185 Atl. 288 (1936), the court said this:

"In the case at bar the declarations are too remote to be relevant. Most of them were made long before the time the gift was made. The only ones which occurred at all proximate in time to the transaction in dispute were those made to a laundress of decedent on or about September 21, 1933. They do not have any bearing on the question whether decedent intended to make a gift on October 2, 1933. We have held that declarations relating to testamentary capacity to be admissible must cover the period when the testament was executed. Likewise, declarations concerning a donor's state of mind must cover a similar period, especially where the transaction is between parent and child, as family quarrels are so often soon followed by complete domestic harmony."

In Ries, the declarations alleged to be inconsistent with a donative intent were made 11 days before the gift, and the court held such declarations too remote to be admitted.

In the case at bar, a similar period of time elapsed

between the making of the will and the opening of the first joint account.

We have considered all of petitioner's exceptions and find them without merit.

## ORDER

And now, May 19, 1980, the exceptions of petitioner, John R. Evans, Sr., administrator of the estate of Benjamin F. Rishel, deceased, to the order of the hearing judge of October 29, 1979, are dismissed and the order of the hearing judge of October 29, 1979, is affirmed.