**Blango v. Jeanes Hospital, Inc.**

*Steven R. Maher,* for plaintiff.

*Kari Aasheim,* for Hillcrest Center and Genesis Healthcare.

*J. Kurt Straub* and *Tara B. Dickerman,* for Jeanes Hospital, for defendants.

OVERTON, *P.J.*, April 12, 2011—This matter is before the appellate court in response to orders reproduced below, issued on September 29, 2010.

Upon consideration of the motions for post-trial relief of Jeanes Hospital, Inc., operating as Jeanes Hospital, and

all responses thereto it is hereby ordered and decreed that Jeanes Hospital's motions to remit the punitive damages award as to Jeans Hospital are granted. The prothonotary is directed to reduce or remit the punitive damages award against Jeanes Hospital from $1,500,000 to $500,000.

After consideration of the motion of Hillcrest Center for a remittitur, plaintiff's opposition thereto, and the arguments of counsel at the September 13, 2010 hearing, it is hereby ordered, adjudged and decreed that the motion of Hillcrest Center is granted.

It is further ordered that the jury's award of punitive damages is hereby reduced to $1,000,000 as to defendant Hillcrest Center.

After consideration of the motion of Hillcrest Center and Genesis Healthcare Corporation for post-trial relief, plaintiff's opposition thereto, and the arguments of counsel at the September 13, 2010 hearing, it is hereby rdered, adjudged and decreed that the motion of Hillcrest Center and Genesis Healthcare Corporation is denied.

Upon consideration of the motions for post-trial relief of Jeanes Hospital, Inc., operating as Jeanes Hospital, and all responses thereto it is hereby ordered and decreed that Jeanes Hospital's motion for post-trial relief is denied.

The plaintiff and both defendants filed appeals.

## FACTS AND PROCEDURAL HISTORY

This matter was brought by plaintiff Shirley Blango as executrix of her late husband Joseph Blango's estate and in her own right for a wrongful death claim and a survival

action based upon Mr. Blango's admission to both facilities during the period of May 21, 2006 and ending on June 13, 2006. A jury trial began in this matter on February 9, 2010 before the Honorable George W. Overton.

The plaintiff's daughter Sheila Rutherford testified that her father had generally good health with some problems with arthritis and his weight generally stayed the same throughout his life. (N.T. 02/09/10 at p.86) She testified that her mother called her on May 21, 2006 and said her father was not moving or speaking and he subsequently was admitted to Jeanes Hospital that same day. (N.T. 02/09/10 at p.87) She testified that she visited him every day for the five days he initially stayed at Jeanes Hospital. (N.T. 02/09/10 at p.92) He wouldn't eat his food and was only offered regular food and never any soft food or supplements. (N.T. 02/09/10 at p.92) The plaintiff was then transferred to Hillcrest Center for ten days. At Hillcrest the plaintiff also "never ate" and the center staff would just take back whatever food was brought in for the plaintiff. (N.T. 02/09/10 at p.96) Ms. Rutherford testified that she never saw her father turned on his bed while at Hillcrest and noticed that he had feces in his diaper. (N.T. 02/09/10 at p.99) Mr. Blango then was brought back to Jeanes Hospital because he became sick on June 5, 2006 and was there for three days. (N.T. 02/09/10 at p.99) Ms. Rutherford testified that her father became noticeably thinner and the diet he was offered was never altered. (N.T. 02/09/10 at p.100) Ms. Rutherford stated that she learned of her father's bedsores during his second stay at Jeanes Hospital from her mother. (N.T. 02/09/10 at p.104) She testified that her father was always on a regular mattress

with no additional supports. (N.T. 02/09/10 at p.105) On June 13, 2006, Mr. Blango was transferred to Abington Hospital and at that point they learned of an infection in the bedsore in his sacral area (the area at the top of his buttocks). (N.T. 02/09/10 at p.107) He stayed at Abington Hospital for approximately five to six weeks and the infection lasted for the rest of his life when he was taken care of by his family and homecare nurses. (N.T. 02/09/10 at p.111)

There were a series of videos admitted that showed the homecare routine for Mr. Blango. (N.T. 02/09/10 at p.116) His family was trained to reposition Mr. Blango every few hours and there was a wound care home nurse but the bedsore continued for the duration of his life. (N.T. 02/09/10 at p.124) Eventually, Mr.Blango's kidney had to be removed at Einstein Hospital. (N.T. 02/09/10 at p.122) Mr. Blango passed away in April of 2008.

Nurse Kathleen Fletcher testified as an expert for the plaintiff and was accepted as an expert in gerontological nursing. (N.T. 02/16/10 at p.49) She reviewed the records in the case and found that defendants' care fell below the standard particularly in the areas of transition of care and communication. (N.T. 02/16/10 at p.53-54) She testified that over the course of his admissions to both defendant facilities, his weight decreased from 190 pounds to 168 pounds. (N.T. 02/16/10 at p.168) She testified that there was no documentation about his diet at Jeanes Hospital or Hillcrest Center and that his protein stores had declined in his first visit to Jeanes Hospital. (N.T. 02/16/10 at p.59) Furthermore, she opined that Jeanes Hospital did not communicate the status of Mr. Blango's skin to Hillcrest

Center, which she stressed was important because of his skin vulnerability. (N.T. 02/16/10 at p.63) She testified that Hillcrest noted in their records that when admitted from Jeanes Hospital, he had three beginning pressure ulcers with two on each ankle and one on his sacrum. (N.T. 02/16/10 at p.62) Furthermore, she testified that Hillcrest Center's transfer form fell below the standard of care. (N.T. 02/16/10 at p.67)

Edna Cox, a registered dietician, was accepted by this court as an expert. (N.T. 02/16/10 at p.168) She testified that Jeanes Hospital failed to provide even the most minimally acceptable care and there was no nutrition assessment despite severe weight loss. (N.T. 02/16/10 at p.195) She furthermore testified that it was below the standard of care to not order a report on his Albumen levels. (N.T. 02/17/10 at p.23) She testified that failure to monitor the intake and output of fluids fell below the standard of care as well. (N.T. 02/17/10 at p.25) As for defendant Hillcrest Center, she testified that they "woefully neglected to provide even the minimally acceptable nutrition services." (N.T. 02/17/10 at p.44) The meals offered fell below the standard of care and the center could have offered supplements such as Ensure or boosted the calories in his current food. (N.T. 02/17/10 at p.51) Ms. Cox also addressed the care plan created by Hillcrest on the 29th of May. (N.T. 02/17/10 at p.62) She said that plan fell below the standard of care because it was not followed through upon and did not address the pressure sores. (N.T. 02/17/10 at p.62)

Dr. James Steg testified for the plaintiff and was accepted by this court as an expert. (N.T. 02/22/10 at p.21) Dr. Steg testified that Mr. Blango contracted a urinary tract infection

during his first stay at Jeanes Hospital and that infection contributed to the development of a pressure ulcer. (N.T. 02/22/10 at p.51) Dr. Steg made his determination based on an analysis of urine culture results. (N.T. 02/22/10 at p.55) He also testified that when Mr. Blango was admitted to Abington Hospital both e-coli and MRSA infections were found in his sacral wound. (N.T. 02/24/10 at p.36)

Nurse Mary Lynn King testified on February 26, 2010. (N.T. 02/26/10, p. 2) She was accepted by this court, without objection, as an expert in wound care and wound care ostomy. (N.T. 02/26/10, p.35) She testified to a reasonable degree of nursing certainty that neither Jeanes Hospital nor Hillcrest Center met their standard of care for the plaintiff. (N.T. 02/26/10, p.36) In terms of the first visit to Jeanes Hospital, she testified that "the documentation, and assessments, and interventions in this case that were put on his skin or not on his skin were not adequate." (N.T. 02/26/10, p.37) Specifically, she testified that Jeanes Hospital failed to assess Mr. Blango's risk for skin breakdown by not giving him a "Braden score," and failed to use preventative measures for bedsores. She also opined that the standard of care was not met for Mr. Blango's visit to Hillcrest as well. (N.T. 02/26/10 at p.71) Specifically, she cites the fact that there was documentation of turning Mr. Blango on days when he was not in the facility. (N.T. 02/26/10 at p.72) There was documentation that Mr. Blango was repositioned on June 6, June 14 and June 15 and he was not at Hillcrest Center on those days. She testified that documentation of services that could not have occurred does not meet the standard of care.

Dr. Richard Berg testified and was accepted by this

court as an expert in infectious disease. (N.T. 02/26/10 at p.22) He testified that the sacral ulcer and wound that Mr. Blango had at the time of discharge from Hillcrest Center to Abington Hospital was the source and cause of the chronic sepsis that he had for the rest of his life. (N.T. 02/26/10 at p.50) He further testified that the sacral bedsore was infected on June 13, 2006 when Mr. Blango got to Abington Hospital. (N.T. 02/26/10 at p.53) The culture revealed both e-coli and MRSA in the wound and that eventually reached his kidney and the kidney had to be removed. (N.T. 02/26/10 at p.79) Furthermore, the original bed sore that Mr. Blango got at Jeanes Hospital and Hillcrest Center increased his risk for developing additional smaller wounds. (N.T. 02/26/10 at p.106) Dr. Berg testified that Mr. Blango's kidney had not been previously infected and that the chronic sepsis prevented healing of the wounds. (N.T. 02/26/10 at p.120,122) Finally, Dr. Berg opined that the costs of care were necessitated by the bedsore. (N.T. 02/26/10 at p.136)

Plaintiff Shirley Blango testified about the care given to her late husband at Jeanes Hospital and Hillcrest Center. (N.T. 03/01/10 at p. 94) She produced two photographs of her husband's wound and indicated that it was a similar representation to how the wound looked when he was admitted to Abington Hospital. (N.T. 03/01/10 at p.96) She testified that that wound existed until Mr. Blango's death in April of 2008. (N.T. 03/01/10 at p.96) She indicated that Mr. Blango had a stroke on May 21, 2006 and was taken to Jeanes Hospital. (N.T. 03/01/10 at p.108) She testified that he could not feed himself and was unable to eat the solid food that the hospital brought for him. (N.T. 03/01/10 at

p.111) Furthermore, none of the hospital staff attempted to help Mr. Blango eat. (N.T. 03/01/10 at p.111) She said she never saw anyone reposition Mr. Blango at Jeanes Hospital and that he was always on his back whenever she saw him. (N.T. 03/01/10 at p.113)

She also testified about Mr. Blango's care at the Hillcrest Center. Ms. Blango testified that she never saw anybody turn or reposition Mr. Blango at the Hillcrest Center. (N.T. 03/01/10 at p.142) She also indicated that she never saw anyone feed him or give him a diet other than solid food and that as a consequence, Mr. Blango rarely ate. (N.T. 03/01/10 at p.147) She also testified that often Mr. Blango would go a long time without his pamper being changed and would be sitting in his own feces and commented to her that "they have me sitting in my own poison." (N.T. 03/01/10 at p.153) She testified that Mr. Blango never received adequate physical therapy and that therapy consisted of sitting in a room and being told to "hold his head up." (N.T. 03/01/10 at p. 157) She further testified that during and after his second admission to Jeanes Hospital she was never informed of any bed sores on Mr. Blango's body and did not learn of any until he was back at Hillcrest the second time. (N.T. 03/01/01 at p.142) She stated that she first saw the actual wound at Abington Hospital when he was first admitted and was informed of the danger of this condition. (N.T. 03/01/10 at p.150)

Ms. Blango testified that Abington Hospital advised her to place Mr. Blango back into a nursing home but she refused. (N.T. 03/01/10 at p.162) Instead, her entire family was trained in how to take care of Mr. Blango at home. (N.T. 03/01/10 at p.167) She testified that because of the

expenses incurred that she had to get a reverse mortgage on their home. (N.T. 03/01/10 at p.169) Mr. Blango died at home surrounded by most of his relatives and family. (N.T. 03/01/10 at p. 175)

On March 5, 2010, the jury reached a verdict where they found both defendants 50 percent liable for their negligence. The jury awarded $500,000 for the survival action, $0 for the wrongful death action and $500,000 for the loss of consortium. Moreover, the jury found both defendants liable for punitive damages.

On March 17, 2010, this court reconvened for the punitive damages portion of the trial. Hillcrest Center called one witness, Carol Dougherty, and Jeanes Hospital called the Chief Financial Officer for the hospital. The jury found Jeanes Hospital liable for $1.5 million dollars in punitive damages and Hillcrest Center liable for $3.5 million dollars in punitive damages. On September 13, 2010, this court heard arguments for both post-trial relief and remittitur. On September 29, 2010, this court denied post-trial relief for both defendants but reduced the punitive damages award for Jeanes Hospital to $500,000 and for Hillcrest Center to $1,000,000.

Plaintiff Shirley Blango raised the following issues in her statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925 (b):

1. The orders from which these appeals (or cross-appeals) have been taken to the Superior Court of Pennsylvania are as follows: (a) the final order of the Honorable George W. Overton dated November

16, 2010;[1] (b) the order of the Honorable George W. Overton dated September 29, 2010;[2] and (c) the order of the Honorable George W. Overton dated September 29, 2010.[3]

2. The factual basis and/or legal rationale for these rulings cannot be fully ascertained from the text of the aforementioned orders, and no explanatory opinion or memorandum accompanied those orders. Nevertheless, plaintiff will posit issues to be raised on appeal in connection with the events that culminated in the entry of this court's final order of November 16, 2010.

---

1. That order reads: "and now, November 16, 2010, upon consideration of the emergency petition of defendant Jeanes Hospital, Inc. operating as Jeanes Hospital, to strike and/or open the judgment entered on October 28, 2010, and any response thereto, it is hereby ordered and decreed that the October 28, 2010 judgment is open and stricken. Judgment is hereby entered in favor of plaintiff and against defendants, Jeanes Hospital, Inc., operating as Jeanes Hospital, and Crestview Convalescent Home, Inc., operating as Hillcrest Center, Crestview Convalescent Home, Inc., and Genesis Healthcare Corporation, jointly and severally, for the molded compensatory damages verdict in the amount of $1,029,722.30. With respect to the punitive damages verdicts, judgment is entered in favor of plaintiff and against defendant, Jeanes Hospital Inc., operating as Jeanes Hospital, in the amount of $500,000.00, and judgment is entered in favor of plaintiff and against defendants, Crestview Convalescent Home, Inc., operating as Hillcrest Center, Crestview Convalescent Home, Inc., and Genesis Healthcare Corporation, in the amount of $1,000,000.00."

2. That order reads as follow: "and now, September 29, 2010, upon consideration of the motions for post-trial relief of Jeanes Hospital, Inc., operating as Jeanes Hospital, and all responses thereto, it is hereby ordered and decreed that Jeanes Hospital's motions to remit the punitive damages award as to Jeanes Hospital, are granted. The prothonotary is directed to reduce or remit the punitive damages award against Jeanes Hospital from $1,500,000.00 to $500,000."

3. That order reads as follows: "and now September 29, 2010, after consideration of the motion of Hillcrest Center for a Remittitur, plaintiff's opposition thereto, and the arguments of counsel at the September 13, 2010 hearing, it is hereby: ordered, adjudged and decreed that the motion of Hillcrest Center is granted. It is further ordered that the jury's award of punitive damages is hereby reduced to $1,000,000.00 as to defendant Hillcrest Center."

3. This court committed reversible error and/or abused its discretion when it entertained some (or all) of the "supplemental" motions for post-trial relief of Jeanes Hospital, even though they were all filed and served in an untimely manner.[4] See e.g., Pa.R.C.P.227.1(b)(2) and 227.1 (c) (requiring post-trial motions to be filed within ten days after the verdict, and stating that grounds not specified in the motion "are deemed waived *unless leave is granted upon cause shown* to specify additional grounds.") (emphasis added). This court did not grant such leave; nor did Jeanes Hospital establish just cause for filing and serving its supplemental motions in an untimely manner.[5]

4. This court committed reversible error and/or abused its discretion when it entertained some (or all) of the "supplemental" motions for post-trial relief of Hillcrest Center defendants, even though they were all filed and served in an untimely manner.[6] See e.g., Pa.R.C.P.227.1(b)(2) and 227.1 (c) (requiring post-trial motions to be filed within ten days after the verdict, and stating that grounds not specified in the motion "are deemed waived *unless leave is granted* upon cause shown to specify additional grounds.") (emphasis added). This court did not grant such leave; nor did Jeanes Hospital establish just cause for filing

4. These "supplemental" motions were filed/served on March 26, 2010 (i.e., 21 days after the verdict was rendered).

5. Aside from deciding defendant's motion for remittitur (which was filed as an afterthought), it would appear that none of the other "supplemental" motions were considered and/or entertained by this court due to the aforementioned deficiencies.

6. These "supplemental" motions were filed/served on March 29, 2010 (i.e., 24 days after the verdict was rendered).

154

and serving its supplemental motions in an untimely manner.[7]

5. Regardless of whether the aforementioned motions should have been entertained and/or considered, this court committed reversible error and/or abused its discretion when it ordered the award for punitive damages be refused as to (a) Jeanes Hospital, and (b) the Hillcrest Center defendants.[8]

6. If this court agrees with any of the foregoing statements, then Plaintiff maintains that this court should (a) request a remand in its Rule 1925(a) opinion, and (2) reinstate the original jury verdict/award against Jeanes Hospital and the Hillcrest Center defendants. See e.g., *Bailey v. Storlazzi*, 729 A.2d 1206, 1210 n.4 (1999).

Appellant defendants Hillcrest Convalescent Home, Inc., and Genesis Healthcare Corporation raised the following issues in its statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925 (b):

A. Errors complained of with regard to the court's order on punitive damages.

1. As a matter of law, the evidence at trial was insufficient to support any award of punitive damages to plaintiffs

_____

7. Aside from deciding defendant's motion to mold the verdict (which was filed as an afterthought), it would appear that none of the other "supplemental" motions were considered and/or entertained by this court due to the aforementioned deficiencies.

8. Because *Genesis Healthcare Corporation is also responsible for satisfying the underlying verdict, the Hillcrest Center defendants have not challenged the inclusion of Genesis Healthcare Corporation in this court's order of November 16, 2010, as to punitive damages.*

and against the Hillcrest Defendants.

2. As a matter of law, Hillcrest Center, as a corporation, cannot be vicariously liable for punitive damages in this case.

3. The amount of the punitive damages award was excessive and constitutes an arbitrary deprivation of property in violation of the federal constitution.

4. The court erred in limiting Hillcrest Center's presentation of evidence at the punitive damages phase.

B. Errors complained of with regard to the imposition of liability.

1. As a matter of law, the record evidence was insufficient to support a verdict of corporate negligence against Hillcrest Center.

2. The court committed reversible error in precluding cross-examination of plaintiff's experts as to their opinions regarding Abington.

3. The court erred in admitted (sic) irrelevant, misleading, confusing and excessively prejudicial photographs.

Defendant Jeanes Hospital raised the following issues in its statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925 (b):

1. The court erred when it failed to grant Jeanes Hospital's request for judgment notwithstanding the verdict, on the whole case, or in the alternative a new

trial, on the grounds that there was no expert testimony on causation which related the condition of the sacral wound as it existed on June 8, 2006, when Mr. Blango left the care of Jeanes Hospital, to his subsequent decline and death.

2. The court erred when it failed to grant Jeanes Hospital's request for judgment notwithstanding the verdict, on the whole case, or in the alternative a new trial, on the grounds that the testimony of plaintiff's expert witness on causation, Dr. Berg, was not supported by the facts in evidence and was, indeed, contradicted by the facts in evidence.

3. The court erred when it failed to grant Jeanes Hospital's motions for directed verdict and for judgment notwithstanding the verdict, in response to plaintiff's claim for corporate liability against the hospital, since there was a complete lack of evidence to support such a claim. In the alternative, the court erred and abused its discretion in failing to award Jeanes Hospital a new trial based on its error in allowing the jury to consider, and to find against the hospital, based on plaintiff's claim of corporate liability. In this same vein, the court erred and abused its discretion in submitting the verdict sheet to the jurors, allowing them to consider a corporate negligence claim against the hospital, and in overruling the hospital's objection to the giving of a jury charge on corporate liability.

4. The court erred when it failed to grant Jeanes Hospital's pre-trial motion for summary judgment and trial motion for directed verdict, and then later failed to

enter judgment notwithstanding the verdict in favor of the hospital on plaintiff's claim for punitive damages. There was a complete lack of evidence, proffered by plaintiff, proving conduct sufficient to justify a punitive damage award against the hospital, both pre-trial and during trial. Alternatively, the hospital was and is entitled to judgment on this issue since it cannot be held vicariously liable for punitive damages based on the conduct of its agents.

5. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after wrongly allowing erroneous testimony (from, in particular, Dr. Steg) that Mr. Blango left Jeanes Hospital on May 26, 2006, with a urinary tract infection.

6. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after wrongly permitting testimony (from, in particular, Edna Cox and nurse Fletcher) of Mr. Blango's alleged 21-pound weight loss and of a purported failure to provide proper nutrition at the hospital during the first Jeanes Hospital admission.

7. The court erred and abused its discretion when it refused to grant Jeanes Hospital a new trial after wrongly denying the hospital's motion in limine and failing to preclude claims and opinion testimony (from, in particular, Dr. Steg and nurse Fletcher) that Mr. Blango had a pressure sore when he left Jeanes Hospital on May 26, 2006.

8. The court erred and abused its discretion when it

failed to grant Jeanes Hospital a new trial after wrongly allowing plaintiff's experts (including, in particular, nurse Fletcher, Edna Cox and nurse King) to testify regarding the first Jeanes Hospital admission, as none of those experts identified any damage of injury to Mr. Blango during that first hospital admission.

9. The court erred and abused its discretion after wrongly denying the hospital's first motion for a mistrial, and for the court's error and abuse of discretion in denying the later motions for mistrial, including the parties' unanimous (Jeanes Hospital's second) motion for a mistrial, relating to the length of the trial.

10. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after wrongly admitting prejudicial photographs and videotape clips which were irrelevant and misleading as to hospital and its conduct. Even more specifically, the court erred and abused its discretion in denying the hospital's motion in limine which sought to bar all photographs and videotapes of Mr. Blango depicting his pressure sore (or sores) which developed much later in time and had no relationship to the hospital admissions.

11. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after wrongly allowing: (a) plaintiff's videotape deposition play-back of nurse testimony (including, in particular, nurses Jones, Sowirka and Tamburino); (b) deposition testimony of available nurse witnesses which fell outside of the scope of their own direct care of the patient (including, in particular, nurses Jones, Sowrika and Tamburino),

which was also beyond the scope of direct examination (including, in particular, nurse Corkery) and which was outside of their competence or personal knowledge (including, in particular, nurses Jones, Sowirka, Corkery and Tamburino); (c) opinion testimony beyond the scope of any nursing expertise (including, in particular, nurses Jones, Sowirka, Corkery and Tamburino); (d) plaintiff to play back cross-examination in her own case in chief (including, in particular, nurse Corkery); and (e) plaintiff to play back the videotaped deposition testimony of one nurse witness who actually testified live at the trial (that being nurse Sowirka).

12. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after wrongly denying the request for a mistrial after plaintiff's counsel was permitted to play back videotaped depositions which did not include the material counter-designated by Jeanes Hospital's counsel.

13. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after denying the hospital's motion in limine and wrongly failing to limit the number of plaintiff's cumulative and redundant expert witnesses, both pre-trial and during the trial.

14. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after wrongly allowing all five of plaintiff's experts witnesses to testify to numerous opinions outside of the scope of their respective expert reports.

15. The court erred and abused its discretion when it

failed to grant Jeanes Hospital a new trial after wrongly overruling the hospital's objection to the closing argument of plaintiff's counsel, which asserted, without basis, that defense counsel and one hospital witness (Mary "George" Georgekutty, RN) had conspired to commit perjury.

16. The court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after wrongly denying the hospital's request for a "substantial factor" charge on causation, and instead gave a "factual cause" instruction. The error and abuse of discretion was compounded when the court gave the erroneous instruction twenty-seven times during the charge of the jury.

17. The court erred and abused its discretion in charging the jurors that they could find punitive damages against the hospital and in compelling the hospital to participate in a punitive damages hearing. The trial court also erred and abused its discretion in submitting verdict sheets to the jury which allowed them to consider and award punitive damages against the hospital.

18. The court erred when it failed to grant the hospital a judgment notwithstanding the verdict on plaintiff's claim for punitive damages at the assessment hearing, because plaintiff failed to put on any evidence of the wealth and/or net worth of Jeanes Hospital.

19. The court erred and abused its discretion in denying the hospital's motions and supplemental motions for post-trial relief (other than its order which remitting the

punitive damages award), and in molding the verdict to add damages for delay, through its orders dated September 29, 2010.

This opinion is offered in response to said appeals.

## DISCUSSION

Both defendants object to the court's denial of post-trial relief on both the trial itself and the punitive damages portion of the proceedings. The plaintiff objects to the court's order remitting a portion of the punitive damage awards. Section I discusses the plaintiff's claims. Section II discusses the claims of defendant Jeanes Hospital, Inc. Section III discusses the claims of defendants Hillcrest Center and Genesis Healthcare, Inc.

### I. *Plaintiff's Claims For Relief.*

#### 1. *Remittitur*

The decision of whether to award punitive damages and the amount to be awarded are within the discretion of the fact finder. *Focht v. Rabada*, 268 A.2d 157 (Pa. Super. 1970); Restatement of Torts § 908(2) (1939). In Pennsylvania, it has been held that the amount of punitive damages must bear a reasonable relationship to the award of compensatory damages. *Hughes v. Babcock*, 37 A.2d 551 (1944); *Mitchell v. Randal*, 137 A.2d 171 (1927). In this instance, both defendants were found 50 percent liable for $1,000,000 in compensatory damages. Therefore, the initial awards of punitive damages were three times the amount of compensatory damages for Jeanes Hospital and seven times the compensatory damages for Hillcrest Center. The awards were reduced to provide a ratio of

2:1 for Jeanes Hospital and 3:1 for Hillcrest Center. This adjustment was within the court's discretion and provided that the awards reflected a more reasonable relationship.

Therefore, plaintiff's claim that remittitur was improper is without merit.

### 2. Consideration of Supplemental Motions

Plaintiff's claim that this court abused its discretion in considering and allowing the supplemental post-trial motions of Jeanes Hospital and the Hillcrest Center is without merit.

The Superior Court in *Sinclair v. Block,* set forth some guidelines for determining when untimely supplemental post-trial motions should be considered waived. According to the *Sinclair* court, "in cases where the opposing party objects to the untimely filing and asserts that he or she is prejudiced thereby, the trial court must then determine whether to grant or deny leave to file the supplemental post-motions and explain its rationale therefor." *Sinclair,* 594 A.2d at 754. However, in the interest of justice under Pa.R.C.P. 126, the *Sinclair* court observed that a trial court could consider untimely supplemental post-trial motions. *Id.* at 754 n.10.

In this instance, the supplemental motions were filed only a few days after the deadline. In the interest of justice, this court determined that these motions should be allowed to be considered. Therefore, plaintiffs' claim is without merit.

### II. *Defendants Hillcrest Center and Genesis Health Care Inc.'s Claims*

## 1. *Punitive Damages*[9]

Defendant argues that as a matter of law, the evidence at trial was insufficient to support any award of punitive damages to plaintiffs and against the Hillcrest defendants. This claim fails.

The fact finder is permitted to award punitive damages when the plaintiff has established that the defendant "acted in an outrageous fashion" due to either an evil motive or in "reckless indifference to the rights of others." *Hutchison v. Luddy*, 582 Pa. 114, 121, 870 A.2d 766, 770 (Pa. 2005) (punitive damages appropriate only if plaintiff establishes defendant acted so outrageously that the defendant demonstrated "willful, wanton or reckless conduct"). "A defendant acts recklessly when 'his conduct creates an unreasonable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Hutchison* at 122, 870 A.2d at 771).

In this instance, there was ample evidence on the record of "reckless indifference" to the rights of others. Mr. Blango was not adequately fed, his skin was not properly evaluated and most importantly there is no evidence that he was properly turned on his bed. This lack of evidence is compounded by the fact that Mr. Blango was documented as turned on days he was not even present in Hillcrest Center. Such evidence, considered by the jury as factfinder, can be reasonably concluded to constitute

9. It should be noted that the jury was only allowed to consider punitive damages against Hillcrest Center and not Genesis Healthcare Inc.

"reckless indifference." Therefore, this claim is without merit. Defendants next argue that as a corporation, they cannot be vicariously liable for punitive damages. This claim fails.

"Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury *unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages.*" 40 P.S. § 1301.812-A(c). In this instance, the jury was presented with evidence that Hillcrest Center was made aware of the conditions of Mr. Blango's care. Furthermore, documentation was made and approved regarding Mr. Blango's care when he was not even present at the center. Therefore, there was ample evidence for the jury to consider in regards to whether or not Hillcrest Center knew of and/or allowed this conduct. Therefore, this claim is without merit.

Defendant next alleges that the amount of punitive damages was excessive and constituted an arbitrary deprivation of property in violation of the federal constitution. This claim is without merit.

In *State Farm v. Campbell*, 538 U.D. 408, the United States Supreme Court reviewed a $145 million punitive damages award. Finding that the award was excessive and disproportionate to the wrong committed, the court ruled it was an unconstitutional deprivation of the insurer's property. The court noted that, although states possess discretion over the imposition of punitive damages, there are procedural and substantive constitutional limitations on

these awards. *Id.* at 1519. The court cautioned that the due process clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments. *Id.* at 1520. While finding that punitive damages are aimed at deterrence and retribution, *id.* at 1519, the United States Supreme Court advised reviewing courts to consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.* at 1520.

In this instance, the award of $1.5 million in punitive damages against Hillcrest Center is not excessive and is in line with the harm caused to Mr. Blango due to the defendant's conduct. Therefore this claim is without merit.

Finally, defendant argues that the court erred in limiting their presentation during the punitive damages phase of the trial. This claim is without merit.

Rulings on the admission and exclusion of evidence fall within the discretion of the trial judge and will not be overturned on appeal absent a manifest abuse of discretion. *General Equipment Manufacturers v. Westfield Insurance Co.*, 635 A.2d 173, 182 (Pa. Super. 1993). In this instance, defendant Hillcrest had Carol Dougherty, nurse administrator, testify at the punitive damages hearing. The court sustained objections to questions about the federal and state ratings of Hillcrest Center. (N.T. 03/15/10 at

p.28) The court entertained arguments during sidebar and held that such testimony was not relevant to consideration of the particular instance of Mr. Blango's care. This does not indicate, based on the record, any "manifest abuse of discretion" and therefore this claim is without merit.

## 2. *Claims Regarding Liability*

Defendants Hillcrest Center and Genesis Health Care raise three claims regarding the imposition of liability. Defendants' first claim that the record evidence was insufficient to find Hillcrest Center liable for corporate negligence is without merit.

The theory of corporate negligence has been extended by the Superior Court to include nursing home facilities. *Scampone v. Grane Healthcare Co.*, 11 A.3d 967 (Pa. Super. 2010). Furthermore, in this instance, the plaintiff presented several experts that concluded beyond a reasonable degree of medical certainty that Hillcrest Center did not meet the standard of care for Mr. Blango. Specifically, Hillcrest Center failed to provide proper nutrition, failed to reposition Mr. Blango on his bed and failed to create and follow through upon adequate care plans. Therefore, the jury was left to consider the plaintiff's experts, as well as the defendant's experts and could have reasonably concluded that Hillcrest Center was negligent. Therefore this claim is without merit.

The defendants' second claim is that the court erred in not allowing cross-examination of plaintiff's experts in regards to their opinions on Abington Hospital. On February 8, 2010, prior the trial, this court considered motions in limine regarding the portions of the plaintiff's

experts' reports that made conclusions about Abington Hospital. At one time, Abington Hospital had been a party in this matter but was released through summary judgment. Defendant's own experts made no conclusions in their reports about the standard of care of Abington Hospital and sought to use the plaintiff's experts' reports in their defense. The court properly denied this motion.

During trial, the defendants attempted to ask the plaintiff's experts about their opinions in regard to Abington Hospital and the plaintiff's objections were sustained. Cross-examination cannot exceed the scope of what is covered during direct examination. Furthermore, there was no "manifest abuse of discretion" and therefore this claim is without merit.

Finally, the defendants allege that the court erred in admitting prejudicial photographs into evidence. Once again, rulings on the admission and exclusion of evidence fall within the discretion of the trial judge and will not be overturned on appeal absent a manifest abuse of discretion. *General Equipment Manufacturers v. Westfield Insurance Co.*, 635 A.2d 173, 182 (Pa. Super. 1993). In this instance, on March 1, 2010, this court excluded the majority of photographs that the plaintiff sought to admit into evidence before Ms. Blango's testimony. None of the photographs that were admitted showed incontinence nor the wound itself undressed. Therefore, the prejudicial nature of these photographs was significantly reduced by the court's rulings. In fact, only two photos were allowed to be shown to the jury. Therefore, defendants' claim is without merit.

### III. *Defendant Jeanes Hospital's Claims.*

#### 1. *New Trial/JNOV and Directed Verdict*

The defendant Jeanes Hospital, Inc. makes several claims for failure to grant a new trial, a request for judgment notwithstanding the verdict and/or a directed verdict. These claims are without merit.

First, we must address the standards that the defendant must meet.

As an initial matter, the decision whether to deny or grant a motion for a new trial rests soundly within the discretion of the trial court. *Houseknecht v. Walters*, 590 A.2d 20 (Pa. Super. 1991). In a negligence case, a new trial is appropriate only where substantial reason exists. *Solomon v. Baum*, 560 A.2d 878 (Pa. Cmwlth. 1989). Substantial reason exists where there was a manifest abuse of discretion or a clear error of law. *Commonwealth v. Chanda*, 485 A.2d 867 (Pa. Cmwlth. 1984).

Furthermore, in reviewing the decision whether or not to grant judgment in favor of one of the parties, a court must "consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner." *Walker v. Grand Central Sanitation, Inc.*, 634 A.2d 237, 240 (Pa. Super. 1993). The standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical." *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863, 868 (Pa. Super. 2000). A trial court's grant or denial of a judgment notwithstanding the verdict will be reversed only when there is an abuse of discretion or

an error of law that controlled the outcome of the case. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

There are two bases upon which a judgment n.o.v. can be entered. One, the movant is entitled to judgment as a matter of law, and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. *Campo v. St. Luke's Hospital*, 755 A.2d 20, 23 (Pa. Super. 2000). Each claim will be discussed in turn and each claim is without merit.

A. *Jeanes Hospital claims JNOV and/or a new trial should have been granted because there was no expert testimony on causation which related the condition of the sacral wound as it existed on June 8, 2006, when Mr. Blango left the care of Jeanes Hospital.*

This claim is without merit.

There was expert testimony that Mr. Blango was not properly fed at Jeanes Hospital, was not properly evaluated, contracted a urinary tract infection and did indeed have a sacral wound when he left Jeanes Hospital on June 8, 2006. The experts opined within a reasonable degree of medical certainty that these factors led to the formation of Mr. Blango's sore as well as the progressively worse condition that his sore underwent to the point where the

damage was irreparable. Therefore, defendant's claim is without merit, this was an instance where reasonable minds could disagree and there was no "manifest abuse of discretion" in denying JNOV or a new trial.

B. *Jeanes Hospital alleges that JNOV and/or a new trial should have been granted on the grounds that the plaintiff's expert on causation, Dr. Berg, gave testimony that was not supported by the facts in evidence.*

This claim is without merit.

Jurors were instructed both at the beginning of the trial and during the jury trial that they could accept or reject all or part of an opinion by an expert. The jury was left to consider whether Dr. Berg's opinions were supported by the facts in evidence and both defendants were given ample opportunity to address their contentions to the contrary during both cross-examination and closing arguments. Therefore, no "manifest abuse of discretion" exists and the court did not err in denying a new trial and/or JNOV.

C. *Jeanes Hospital claims the court failed to grant a directed verdict in response to plaintiff's claims for corporate liability against the hospital.*

This claim is without merit.

There was no "manifest abuse of discretion" in allowing the jury to consider whether or not Jeanes Hospital should be assessed corporate liability for its negligence. There was evidence on the record of failure to communicate properly in transition to Hillcrest Center, failure to provide proper nutrition, failure to assess nutrition levels and failure to assess the condition of Mr. Blango's skin. Thus, the jury

was left with evidence that they could consider and thus reasonably conclude that Jeanes Hospital was negligent.

D. *Jeanes Hospital claims that the court erred in failing to grant a pre-trial motion for summary judgment, a motion for directed verdict and JNOV on plaintiff's claim for punitive damages. The hospital claims that was no evidence to support a punitive damages award and that it cannot be held vicariously liable for the actions of its agents.*

This claim is without merit.

"Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury *unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages.*" 40 P.S. § 1301.812-A(c). In this instance, the jury was presented with evidence that Jeanes Hospital was made aware of the conditions of Mr. Blango's care. They were presented with evidence that Mr. Blango was not provided food and that he was not properly taken care of. Therefore, there was ample evidence for the jury to consider in regards to whether or not Jeanes Hospital knew of and/or allowed this conduct. Therefore, this claim is without merit.

E. *Jeanes Hospital claims that the court erred and abused its discretion when it failed to grant Jeanes Hospital a new trial after allowing testimony that Mr. Blango left Jeanes Hospital on May 26, 2006 with a urinary tract infection.*

This claim is without merit.

The jury was properly instructed that they can accept or reject any expert opinion. Furthermore, Jeanes Hospital did not object to Dr. Steg being accepted as an expert. Additionally, both defendants were given ample opportunity to cross-examine Dr. Steg on his opinions as to whether based on the urine culture and other information that Mr. Blango indeed had a urinary tract infection. Therefore, this claim is without merit as there was no "manifest abuse of discretion."

F. *Jeanes Hospital alleges that the court erred by permitting testimony that Mr. Blango lost 21 pounds and/ or did not receive proper nutrition at the hospital during his first admission.*

This claim is without merit. There was no "manifest abuse of discretion" in allowing relevant evidence supported by both experts and civilian witnesses (Ms. Rutherford and Ms. Blango) that Mr. Blango did not eat regularly while at Jeanes Hospital and lost a significant amount of weight during the time periods that he was at Jeanes Hospital. This evidence was relevant and probative to whether or not Jeanes Hospital or Hillcrest Center met their standards of care. Therefore, this claim is without merit.

G. *Jeanes Hospital claims that the court erred and abused its discretion by failing to preclude claims and opinion testimony that Mr. Blango had a pressure sore when he left Jeanes Hospital on May 26, 2006.*

This claim is without merit. There was no "manifest abuse of discretion" in allowing the experts to offer their

opinions on whether or not Mr. Blango had a pressure sore at that time. The defendants were given ample opportunity to cross-examine the plaintiff's witnesses on their findings as well as product experts during their own case-in-chief. Therefore, this claim is without merit.

H. *Jeanes Hospital claims that the court erred in allowing the plaintiff's experts to testify regarding the first Jeanes Hospital admission because none of these experts identified any damage or injury to Mr. Blango during that first hospital admission.*

This claim is without merit. The plaintiff's experts were able to offer an opinion on the standard of care during Mr. Blango's first visit to Jeanes Hospital based upon documentation, lack of proper nutrition and failure to provide appropriate transitional documentation for his admission to the Hillcrest Center. Furthermore, the defendants were given ample opportunity to cross-examine the plaintiff's witnesses on their findings. There was no "manifest abuse of discretion" and this claim is without merit.

I. *Jeanes Hospital alleges that the court erred and abused its discretion when it failed to grant Jeanes Hospital a mistrial based on length of trial.*

This claim is without merit.

On February 24, 2010, both the plaintiff and the defendant's counsel moved for a mistrial based on concerns regarding the length of the trial as it had been interrupted due to several snow storms and other unforeseen events.[10]

---

10. Counsel also jointly requested and received a one day suspension of the trial due to defense counsel Dias' personal business out of state.

In response, the court, with the presence of counsel, polled the twelve jurors regarding their ability to serve for several more weeks. This polling was put on the record and after it was completed, the plaintiffs withdrew their motions for mistrial. The court then denied the defendant's remaining motion for a mistrial.

There was no "manifest abuse of discretion" and therefore this claim is without merit.

J. *The court erred when it failed to grant Jeanes Hospital a new trial after admitting prejudicial photographs and videotape clips which it alleges were irrelevant and misleading.*

This claim is without merit.

In this instance, on March 1, 2010, this court excluded the majority of photographs that the plaintiff sought to admit into evidence before Ms. Blango's testimony. None of the photographs that were admitted showed incontinence nor the wound itself undressed. Therefore, the prejudicial nature of these photographs was significantly reduced by the court's rulings. In fact, only two photos were allowed to be shown to the jury.

In terms of the videoclips showing a "day in the life" of Mr. Blango's home care, these clips were presented to show the costs and demands of Mr. Blango's home care regimen as they related to potential damages. Moreover, the witnesses that authenticated these videoclips were asked on the record whether this reflected the condition that Mr. Blango was in when he was at Jeanes Hospital and they all answered that it was not. Therefore, there was no misleading aspect to the admission of these videoclips.

Therefore, there was no "manifest abuse of discretion" and plaintiff's claim is without merit.

K. *Jeanes Hospital alleges that the court erred in allowing videotape deposition playback, deposition testimony of nurse witnesses which fell outside the scope of their own direct care, opinion testimony beyond the scope of any nursing expertise and other related objections to the playing of videotapes during the trial.*

All of these claims are without merit.

There is no showing of any "manifest abuse of discretion" in allowing any of this evidence. First, Pa.R.C.P. 4020 (a)(5) allows for depositions of medical witnesses to be played for the jury instead of the witnesses having to testify live. Therefore, the videotaped depositions of nurses Jones, Sowirka and Tamburino were admissible. Additionally, Jeanes Hospital argues that portions of the videotaped depositions were improperly allowed that went beyond the scope of direct examination. However, Jeanes Hospital did not specifically object on the record to the parts of the videotapes that it wanted redacted and therefore waived any claim of error. There is no evidence based on the playback of any of these videotapes of a "manifest abuse of discretion" and therefore this claim is without merit.

L. *Jeanes Hospital claims that the court erred in failing to grant a mistrial after plaintiff's counsel was able to play back videotaped depositions without Jeanes Hosptial's counter designations.*

This claim is without merit. Jeanes Hospital raised this matter with the court and was permitted to play its counter-

designations during its own case-in-chief. Therefore, there was no error.

M. *Jeanes Hospital claims that the court erred and abused its discretion when it failed to grant a new trial after denying the hospital's motion in limine to limit the number of plaintiff's cumulative witnesses.*

This claim is without merit. Once again, there must be a "manifest abuse of discretion" for there to be reversible error.

Generally, a court has discretion to limit the number of witnesses to be called in support of a particular point in issue. *Ries v. Ries' Estate*, 322 Pa. 211,185 A. 288 (1936). Moreover, the court has the discretion to allow witnesses to testify. In this instance, there is no showing on the record of a "manifest abuse of discretion" in allowing the plaintiff's witnesses to testify. In addition, the plaintiff's expert witnesses did all render opinions on different aspects of the case and came from a wide variety of specialities. Therefore, this claim is without merit.

N. *Jeanes Hospital claims that the court erred in allowing all five of the plaintiff's expert witnesses to testify to numerous opinions outside of the scope of their respective expert reports.*

This claim is without merit.

"In deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word 'fair.' The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and

his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.... *'Fair scope' contemplates a reasonable explanation and even an enlargement of the expert's written words.*" *Wilkes-Barre Iron & Wire Works Inc. v. Pargas of Wilkes-Barre*, 502 A.2d 210, 212-13 (Pa. Super. 1985). (emphasis added)

In this instance, there is nothing unfair about any of the plaintiff's experts testimony whenever it deviated from the written words of the report. Therefore, this claim is without merit.

O. *Jeanes Hospital claims that the court erred when it failed to grant a new trial after wrongly overruling the hospital's objection to the closing arguments of plaintiff's counsel.*

This claim is without merit. First and foremost, this court specifically instructs the jurors that the arguments of counsel are not evidence.

The comment at issue referred to nurse George when plaintiff's counsel said, "can you imagine being in the position, a lawyer comes to you and says to you you've got to meet the standard and your document says this?" (N.T. 03/05/10, at p.25) This comment does not rise to the level of reversible error. The court gave the jurors plenty of curative instructions regarding closing arguments not constituting evidence. Therefore, this claim is without merit.

P. *Jeanes Hospital alleges that the court erred in denying the defendant's request for a "substantial factor"*

*charge instead of a "factual cause" charge.*

This claim is without merit. The Pennsylvania Standard Jury Instructions recommend "factual cause" be given instead of "substantial factor." Pa. SSJI (Civ) 3.15. Therefore, defendant's claim is without merit.

Q. *Jeanes Hospital claims that the court erred in charging the jurors that they could find punitive damages against the hospital.*

This claim is without merit as previously discussed in section "D."

R. *Jeanes Hospital claims that the court erred in not granting JNOV on the punitive damages verdict because plaintiff failed to put on any evidence of the wealth and/or net worth of Jeanes Hospital.*

This claim is without merit.

Plaintiff was not required to put forth evidence of defendant's net worth. Moreover, defendant had the opportunity to and did call its chief financial officer to make the argument that Jeanes Hospital was a small hospital, had been operating on a loss and should not be subject to punitive damages. Therefore, this claim is without merit.

## CONCLUSION

The court's order dated September 29, 2010, denying the motions for post-trial relief and granting remittitur for punitive damages should be affirmed.